938 F.2d 781
 RELIANCE INSURANCE COMPANY, Plaintiff-Appellee/Cross-Appellant,
v.
William J. ZEIGLER, Defendant-Appellant/Cross-Appellee,
and
Frankie M. Zeigler, Defendant-Cross-Appellee.
 Nos. 90-1628, 90-1799, 90-1913 and 90-2068.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 7, 1991.
Decided July 31, 1991.
 
 Edward M. Kay, James T. Ferrini, Randall Marmor, E. Christopher Caravette, Gilbert J. Schroeder, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for Reliance Ins. Co.
 Michael W. Rathsack, Lawrence L. Kotin, Chicago, Ill., for William J. Zeigler.
 Louis W. Brydges, Sr., Brydges, Riseborough, Morris, Franke & Miller, Waukegan, Ill., Kathleen Hendrickson, Marathon, Fla., for Frankie M. Zeigler.
 Before WOOD, Jr. and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 William J. Zeigler owes Reliance Insurance Company ("Reliance") at least $1.6 million under an indemnity agreement. He appeals the District Court's judgment that the indemnity agreement requires him to post an additional $2.3 million as collateral against Reliance's further damages. Reliance cross-appeals because the District Court refused to allow Reliance to attach an annuity and an individual retirement account ("IRA") that William Zeigler and his wife own, respectively. We reverse and remand for recalculation the portion of the District Court's judgment requiring William Zeigler to post the $2.3 million in collateral, because the District Court double counted at least some of Reliance's damages in determining this amount. We affirm the District Court's judgment that the Zeiglers' annuity and IRA are exempt from attachment under Illinois law.Discussion
 
 
 2
 The District Court decided this case on summary judgment, so our review is de novo. See, e.g., Gilty v. Village of Oak Park, 919 F.2d 1247, 1250 (7th Cir.1990).
 
 
 3
 William Zeigler was an officer and shareholder in Wm. Zeigler & Son, Inc. ("Zeigler Construction"), which bought surety bonds from Reliance. Reliance, in turn, required Zeigler and his wife Frankie to sign an indemnity agreement making them personally liable for any amounts that Reliance would have to pay under the surety bonds. A few years passed, Zeigler Construction became a losing proposition, and the company abandoned a number of its projects in midstream.
 
 
 4
 As the bonds require, Reliance has been paying to finish the projects. Under the indemnity agreement, the Zeiglers are liable to Reliance for the amounts it has paid to finish the projects, and the Zeiglers must post collateral for the further expenses that Reliance may incur. Indemnity Agreement, pp 2, 7. The District Court ordered the Zeiglers to pay Reliance $1.6 million in damages for money that Reliance has already spent in finishing the construction projects, and to post collateral of $2.3 million. Memorandum Opinion and Order, p. 6 (February 9, 1990).
 
 
 5
 The Zeiglers do not challenge the $1.6 million in actual damages that the District Court awarded Reliance. William Zeigler, but not Frankie, challenges the $2.3 million collateral as excessive. The only source that Reliance claims for the $2.3 million figure is a report prepared by "Meridian Consulting Group, an organization retained by Reliance to analyze the extent of its obligation to Zeigler [Construction]'s creditors." Brief and Argument of Reliance, p. 9. According to Reliance, this report concludes that as of June 1989, before Reliance had spent any money on the construction projects, Reliance could anticipate $2.3 million in losses. Id., at 9-10. Reliance's numbers do not quite jibe,[1] but even accepting its characterization of the report, Reliance is entitled to a total of $2.3 million, divided between actual damages and collateral for the future. With uncontested, actual damages of $1.6 million, this leaves about $700,000 in rounded dollars for William Zeigler to post as collateral. Anything more is double counting. We remand for the District Court to redetermine the amount of collateral that William Zeigler must post, which should not include any part of the uncontested $1.6 million that the District Court separately ordered as actual damages.[2]
 
 
 6
 Reliance cross-appeals the District Court's decision that Illinois law bars Reliance from attaching an annuity that William Zeigler owns and an IRA that belongs to Frankie Zeigler. Under Ill.Rev.Stat., ch. 110, p 12-1006, "A debtor's interest in ... payments under a retirement plan is exempt from seizure for the satisfaction of debts." To qualify for this protection, the retirement plan must be "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended." Id. After a hearing, the District Court found that the Zeiglers' annuity and IRA met this good faith requirement, a finding that Reliance does not challenge.
 
 
 7
 Reliance's main argument is that federal law preempts the Illinois exemption.[3] The federal provision at issue is Sec. 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. Sec. 1144(a). The threshold question is whether the Zeiglers' annuity and IRA are "employee benefit plan[s]" for purposes of this section. An employee benefit plan is defined in part as a fund "established or maintained" by an employer. 29 U.S.C. Sec. 1003(a); see 29 U.S.C. Secs. 1002(1), (2)(A), (3). Without dispute, Frankie Zeigler purchased the IRA with her own money, and a securities broker maintains the account. Because the IRA was not established or maintained by Frankie Zeigler's employer, it cannot be an employee benefit plan and so cannot be the subject of preemption under ERISA Sec. 514(a).
 
 
 8
 William Zeigler's annuity presents a somewhat closer question. Having reached retirement age, he was entitled to a lump sum payment from Zeigler Construction's ERISA-covered retirement plan. Instead of receiving a cash payment, he arranged for Zeigler Construction to write a check payable to the insurance company that issued his annuity. Zeigler Construction also filled out certain paperwork in connection with the annuity. If these actions by Zeigler Construction "established" the annuity, then Reliance has at least made it to first base on its preemption argument.
 
 
 9
 The Department of Labor's implementing regulations, however, indicate that Zeigler Construction did not establish the annuity within the meaning of ERISA. Under 29 C.F.R. Sec. 2510.3-2(d), an employer may "collect contributions through payroll deductions ... and ... remit them to the sponsor of an [individual retirement] annuity" without establishing an employee benefit plan--provided that the employee's participation is voluntary, the employer does not endorse the annuity, and the employer receives no compensation other than reimbursement for administrative services. Similarly, in a slightly different context, 29 C.F.R. Sec. 2510.3-2(f) authorizes employers to "collect[ ] annuity or custodial account considerations ... remit[ ] such considerations to annuity contractors and maintain[ ] records of such considerations," without thereby establishing or maintaining an employee benefit plan.
 
 
 10
 These regulations show that an employer's acts of forwarding an employee's money for the purchase of an annuity and completing paperwork do not by themselves establish an employee benefit plan. This conclusion makes sense. Again, William Zeigler was entitled to a lump sum cash distribution. He could have taken his cash and bought the annuity at issue here himself, in which case no real argument could arise that the annuity had been established by Zeigler Construction. As long as he bought the annuity within 60 days of receiving his lump sum distribution, Zeigler's tax treatment would have remained the same.[4] See 26 U.S.C. Sec. 402(a)(5) (allowing employees to "rollover" distributions from qualified trusts into other eligible retirement plans). It would be a needless elevation of form over substance to treat these transactions differently.
 
 
 11
 Our conclusion might be different if Reliance could show that Zeigler Construction selected the annuity at issue and presented it to William Zeigler as the company's preferred plan, or that Zeigler Construction received a commission for the sale of the annuity, or did some other act to take it out of the role of mere conduit. But Reliance has not alleged, much less shown, such facts. In short, William Zeigler's annuity is not an employee benefit plan within the meaning of ERISA Sec. 514(a) because it was not established by his employer. For this reason, ERISA Sec. 514(a) cannot preempt the Illinois statute in the present case.
 
 
 12
 Finally, Reliance contends that the Illinois statute violates due process because it applies to cases such as the present one that were "pending on" the statute's effective date. Ill.Rev.Stat., ch. 110, p 12-1006(d). But "a court should 'apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary.' " Schalk v. Reilly, 900 F.2d 1091, 1096 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990), quoting Bradley v. School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The statutory direction in this case leaves no doubt that the Illinois statute applies, and Reliance has not pointed to any manifest injustice from the statute's application--leaving Reliance with no basis for its due process challenge.
 
 Conclusion
 
 13
 For the reasons stated above, the portion of the District Court's judgment ordering William Zeigler to post $2.3 million as collateral is REVERSED and REMANDED for recalculation. The District Court's judgment is AFFIRMED in all other respects.
 
 
 
 [1]
 Meridian Consulting Group's "Summary of Estimated Costs" appears in the record as Exhibit C to Reliance's Complaint. That document shows an estimated total cost of $5,542,191 for completion of the construction projects, from which it subtracts a $3,584,554 "contract balance" apparently due from the buyers of the projects, to produce a "grand total" cost of $1,977,637. This $1,977,637 figure is repeated in the affidavit of Lavane Creed, an accountant for Meridian Consulting Group, as Meridian's "estimate of costs which will be incurred by Reliance." It is unclear how Meridian derived its $2.3 million figure from this $1,977,637 estimate
 
 
 [2]
 In fairness to the District Court, we note that the language of its judgment does not compel the interpretation that Reliance may collect both the $1.6 million in actual damages and another $2.3 million as collateral. All of the parties have adopted this interpretation on appeal, however, and it is probably the most reasonable view of the District Court's language. If this interpretation reflects a misunderstanding by the parties and this Court, the District Court is free on remand to simply clarify its prior Order
 We also note that William Zeigler made, but has withdrawn, an argument that the posting of collateral is an equitable remedy, and that district courts lack authority to grant equitable relief on summary judgment under Seaboard Surety v. Racine Screw Co., 203 F.2d 532, 533 (7th Cir.1953). Seaboard Surety has been little cited, and criticized when it has. Zeigler's withdrawal of the issue, however, precludes us from making any definitive statement about Seaboard Surety 's continued validity.
 
 
 [3]
 Reliance also argues that the Zeiglers waived any exemption that their property might have from attachment. The Indemnity Agreement states that the Zeiglers "hereby waive all right to claim any property ... as exempt from levy, execution, sale or other legal process." Indemnity Agreement, p 14. We do not decide the legal enforceability of this provision because Reliance failed to present this contract language to the District Court. Arguments may not be raised for the first time on appeal. See, e.g., Maciosek v. Blue Cross & Blue Shield United, 930 F.2d 536, 540 n. 2 (7th Cir.1991)
 
 
 [4]
 So why didn't Zeigler accept the lump sum distribution and buy the annuity himself? A direct transfer of money from one retirement fund to another may be good practice to prevent the possibility of an administrative mishap that would violate the 60 day window for rollovers. Perhaps Zeigler also viewed any time during which he had unfettered control of the money as a period when that money might be subject to attachment. Or perhaps he just thought it a needless inconvenience to take brief control of the money himself. The record does not disclose Zeigler's actual motivation, and Reliance has not alleged any facts in this regard. None of the likely reasons, however, provide a basis for treating Zeigler Construction's purchase of the annuity as establishment of an employee benefit fund