AUTO OWNERS INSURANCE, as Subrogee of Daniel Jansen, Plaintiff-Appellee, v. LEON BERKSHIRE, Defendant-Appellant.

Second District  No. 2—91—0579

Opinion filed March 6, 1992.—Rehearing denied April 7, 1992.

Mary P. Gorman, of O'Brien, Healy, Wade & Gorman, of Rockford, for appellant.

Richard M. Butera, of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Leon Berkshire, appeals the order of the circuit court granting the motion of plaintiff, Auto Owners Insurance, the subrogee of its insured party, Daniel Jensen, for an order of turnover of certain funds held by First Federal Savings and Loan Association of Rockford (First Federal). The issue on appeal is whether the funds deposited in a checking account are exempt from execution because they are traceable to the proceeds of retirement benefits pursuant to section 12—1006 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 12—1006). This is a case of first impression as no Illinois court has yet ruled on the extent of section 12—1006. We have jurisdiction under Supreme Court Rule 304(b)(4) (134 Ill. 2d R. 304(b)(4)), as this appeal concerns a final order from a supplemental proceeding under section 2—1402 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1402).

Plaintiff filed a complaint in which it alleged that defendant had negligently operated his automobile causing $100,000 in damages to its insured. Defendant failed to file an answer, and plaintiff obtained a default judgment on February 26, 1988. Over the next three years, plaintiff collected a few thousand dollars by serving defendant's employer with wage garnishments.

On October 30, 1990, plaintiff served a citation to discover assets on First Federal. Defendant filed a claim of exemption of the $696.32 in the account, alleging the funds were his interest in retirement benefits paid to him by his former employer. Plaintiff petitioned for the turnover of the funds. The circuit court found that the proceeds were not exempt from the "non-wage garnishment" filed by plaintiff and ordered the turnover of the funds.

As there is no report of proceedings, the parties have stipulated to certain facts. (See 134 Ill. 2d R. 323(d).) Plaintiff and defendant agree that all the funds in the account were "proceeds from a pay-out to the Defendant of retirement benefits paid to him by his former employer." Plaintiff argued below that the funds lost their exempt character as retirement funds when defendant deposited them into his checking account. The circuit court found that because defendant de-

posited them into a personal account and were being used for the defendant's individual use, the funds were "no longer" exempt. No other information regarding the pension plan is before this court.

■■ Section 12—1006 states as follows:

"(a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(b) 'Retirement plan' includes the following:

(1) a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;

(2) a government or church retirement plan or contract;

(3) an individual retirement annuity or individual retirement account; and

(4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended." Ill. Rev. Stat. 1989, ch. 110, par. 12—1006.

Prior to the effective date of section 12—1006, the Code of Civil Procedure provided for the exemption of pensions and similar assets in section 12—1001(g) (Ill. Rev. Stat. 1987, ch. 110, par. 12—1001; see also Ill. Rev. Stat. 1979, ch. 52, par. 13(b); *In re Vogel* (N.D. Ill. 1987), 78 Bankr. 192, 195). In addition, pension plans which included an anti-alienation clause became spendthrift trusts and could not be attached by creditors. (*Peoples Finance Co. v. Saffold* (1980), 83 Ill. App. 3d 120, 122.) The Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*) also contains its own provisions for exemptions. In the last decade, the legislature has greatly increased the protection afforded by the exemption statutes. (See *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 278-80; *In re Whalen* (C.D. Ill. 1987), 73 Bankr. 986, 989.) We must also note that while the trial court referred to a nonwage garnishment, the procedure employed by plaintiff was a supplementary procedure under section 2—1402, namely, a citation to discover assets and a motion for a turnover. The nonwage garnishment action has its own exemption for pension plans and does not ap-

ply here. (See Ill. Rev. Stat. 1989, ch. 110, par. 12—704.) Instead, we must apply the language of section 12—1006.

When interpreting a disputed statutory provision, the court must first ascertain and give effect to the true intent and meaning of the legislature, considering first the statutory language. (*Waste Management of Illinois, Inc. v. Illinois Pollution Control Board* (1991), 145 Ill. 2d 345, 348; *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Those terms which are unambiguous must be given their plain and ordinary meaning. The court should not insert words into a legislative enactment when the statute otherwise presents a cogent and justifiable legislative scheme. (*Waste Management*, 145 Ill. 2d at 348.) To the extent that the statute is susceptible of two interpretations, a court may properly examine other sources for evidence of legislative intent, including the reason for the enactment, the circumstances that led to the adoption, the end sought to be achieved and the statutory language before the change. *Logston*, 103 Ill. 2d at 279.

■ Section 12—1006 protects a debtor's interest "in the assets" and a debtor's right "to receive" benefits, distributions, refunds of distributions or other payments under a retirement plan. Unfortunately, the record in the cause before the court does not explain the nature of the "pay-out" of defendant's pension plan. It could be a lump-sum distribution of defendant's accrued benefits paid on termination (see *In re Smith* (C.D. Ill. 1990), 115 Bankr. 144, 147 (construing former section 12—1001(g)(5) to hold a lump-sum asset not exempt because it was not a "payment"); *In re Summers* (S.D. Ill. 1989), 108 Bankr. 200, 203), or it could be a periodic distribution of payments intended for support. In either event, the language of the statute is broad and all inclusive. Section 12—1006 applies to the proceeds traceable to pension plan payments. By its very terms, it protects the principal as well as the income or the right to receive payments. Where the purpose of an exemption is to protect income necessary for the support of a debtor and his family, it makes no sense to allow the funds to be exempt so long as the debtor cannot use them. (See *First National Bank v. How* (1896), 65 Minn. 187, 190, 67 N.W. 994, 995; Dunham, *Tracing the Proceeds of Exempt Assets in Bankruptcy and Non-Bankruptcy Cases*, 1978 S. Ill. U. L.J. 317, 323 (1978).) Thus, section 12—1006 allows the debtor to receive benefits and to use them as well. Any other interpretation frustrates the legislative policy and renders the statute meaningless.

■ A debtor may trace the exemption from the exempt asset to the liquid form, but the concept of tracing is not limitless. So long as the debtor continues to hold and to use the funds for the support of

the debtor and his family, the exemption statutes require the exemption of funds traceable from exempt payments. Conversely, if the debtor transforms the support payments into an investment, the purpose of the statutes is not being met; the funds are not being used for support and thus should lose their exempt character. (See Dunham, 1978 S. Ill. U. L.J. at 325.) Thus, the exempt funds remain exempt so long as they retain the "quality of moneys." *Philpott v. Essex County Welfare Board* (1973), 409 U.S. 413, 416, 34 L. Ed. 2d 608, 611, 93 S. Ct. 590, 592; *Porter v. Aetna Casualty & Surety Co.* (1962), 370 U.S. 159, 162, 8 L. Ed. 2d 407, 410, 82 S. Ct. 1231, 1233.

The courts of this State have applied the *Philpott* quality of moneys test to determine that the deposit of certain Federal proceeds into a checking account or certificate of deposit does not make the exempt funds lose their exempt character. (*Fayette County Hospital v. Reavis* (1988), 169 Ill. App. 3d 246, 251 (exempting the deposit of Social Security payments); *Shrader v. Maultz* (1978), 58 Ill. App. 3d 484, 486 (exempting the deposit of Railroad Retirement Act benefits).) While it did not state the "quality of moneys" test, the court in *East Moline Works Credit Union v. Linn* (1964), 51 Ill. App. 2d 97, 101-02, held that funds remaining from a worker's compensation settlement retained their exemption when deposited into a checking account. Under the quality of moneys test, defendant in the cause before the court would still be entitled to exempt the funds when he deposited them into his checking account. The personal property exemption statutes are to be construed liberally to protect debtors (*McClellan v. Powell* (1902), 109 Ill. App. 222, 225; *In re Barker* (7th Cir. 1985), 768 F.2d 191, 196), and liberal tracing should be allowed when the purpose of the statute is met (see *In re Jackson* (C.D. Ill. 1989), 95 Bankr. 590, 593).

Although plaintiff has not cited *Reavis*, we note that the court held in *dicta* that a debtor's right to receive benefits did not include the exemption of property traceable to exempt property, based on an argument that section 12—1001 provided for tracing for some funds but not others. (*Reavis*, 169 Ill. App. 3d at 250.) However, since the holding of *Reavis* in 1988, the legislature has expanded the language and placed the exemption for pensions into a statutory section separate from section 12—1001, and we must construe section 12—1006 apart from that section. Also, we cannot read the statutes to render them meaningless. Not to permit the tracing of the ready funds would frustrate the purposes of the exemption and pension statutes, which are to provide support for the debtor and his family and to prevent them from becoming public charges. (See *In re Marriage of Logston*

(1984), 103 Ill. 2d 266, 279-80; *Christ Hospital v. Greenwald* (1980), 82 Ill. App. 3d 1024, 1028.) Although the other exemption statutes provide for the tracing of some benefits and not of others, the principle of *expressio unius est exclusio alterius*, applied in *Reavis*, has no place in interpreting the exemption statutes when to apply it would frustrate the purpose of the statutes. (See Dunham, 1978 S. Ill. U. L.J. at 320, 343 (construing the identical language of the Federal statute on which section 12—1001(h) was based).) The concept of tracing is part of Illinois law even where the exemption statute does not specifically provide for it. (See *Linn*, 51 Ill. App. 2d at 101.) "[T]he intent of the exemption in question is not limited to the funds before they reach the pensioner, but also includes monies derived from the pension payments in the hands of the pensioner." *Shrader*, 58 Ill. App. 3d at 487.

At this point it is important to note that the record does not reflect, and the parties do not argue, whether the pension in the cause before the court qualified under section 401 of the Internal Revenue Code (26 U.S.C.A. §401 (West 1988)) and the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1001 *et seq.* (West 1985)). Thus, it is unnecessary for us to join the controversy whether ERISA preempts the application of the Illinois exemption statute. Compare *In re LeFeber* (7th Cir. 1990), 906 F.2d 330, 331, with *In re Wimmer* (C.D. Ill. 1991), 129 B.R. 563, 568.

Even if our statute were preempted, the Internal Revenue Code and ERISA provide that qualified pension benefits may not be attached or garnished. (29 U.S.C.A. §1056(d)(1) (West 1985); 26 U.S.C.A. §401(a)(13) (West 1988); Treas. Reg. §1.401(a)—13(b)(1); *Kennedy v. Deere & Co.* (1987), 118 Ill. 2d 69, 74; *Peoples Finance Co. v. Saffold* (1980), 83 Ill. App. 3d 120, 123; *Greenwald*, 82 Ill. App. 3d at 1026.) ERISA also protects the proceeds of a qualified plan. (*Travelers Insurance Cos. v. Fountain City Federal Credit Union* (11th Cir. 1989), 889 F.2d 264, 266.) The funds of a plan may be rolled over into another qualified plan. (See 26 U.S.C.A. §403(a)(4) (West 1988); *Tenneco Inc. v. First Virginia Bank* (4th Cir. 1983), 698 F.2d 688, 690.) As debtors can have no expectation of receiving the funds prior to retirement, creditors cannot expect to satisfy their claims from those assets even when they are payable as a lump sum. *Smith v. Mirman* (4th Cir. 1984), 749 F.2d 181, 184-85.

Thus, defendant's funds retained their character when he deposited them into his checking account. To paraphrase Portia, the quality of moneys is not strained; it droppeth as a liquid asset from the pension trustee to the account beneath. It is twice exempt: it is

exempt when given and exempt when received. Since the basis of the trial court's order appears to be that the funds lost their character upon deposit, the trial court erred in its reasoning.

However, the record is not clear regarding the character of the funds. Thus, our analysis is not complete because even if the funds were originally exempt, they may still lose their exemption depending on the original character of the payment. The record does not clearly demonstrate the nature of the "pay-out" of the pension plan. If the funds represent a payment of defendant's total accrued benefits as a lump-sum distribution, then the funds could be held for future use and investment rather than support. It was incumbent upon defendant to ensure the continuing qualification of the asset under ERISA, the Internal Revenue Code or the exemption statute by depositing the pension funds into a spendthrift trust, IRA or other protected plan. (See 26 U.S.C.A. §402(a)(5) (West 1988); *Reliance Insurance Co. v. Zeigler* (7th Cir. 1991), 938 F.2d 781, 784.) On the other hand, if the payment was a periodic pension benefit intended for current support, the funds were exempt and stayed exempt because defendant deposited them into an account retaining the "quality of moneys." There is no evidence that the funds were deposited into a nonqualified account for the purpose of investment; such an account would not be deemed necessary for defendant's current living expenses and would not meet the statutory purpose behind the allowance of an exemption. *Shrader*, 58 Ill. App. 3d at 487.

Thus, we must remand the cause for the trial court to make an additional finding. If the funds were a lump-sum distribution of defendant's interest in his pension plan, the funds were no longer exempt because he failed to roll the funds over into another qualified plan. Conversely, if the funds were a pension distribution intended for support, the funds remained exempt as they retained the quality of moneys in the checking account.

For the above reasons, the order of the circuit court of Winnebago County is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

GEIGER and NICKELS, JJ., concur.