In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2412

In the Matter of:

Donald Weinhoeft and Anita L. Weinhoeft,

Debtors-Appellants.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-3327--Richard Mills, Judge.

Argued December 6, 2001--Decided December 21, 2001

Before Cudahy, Easterbrook, and Evans,
Circuit Judges.

Easterbrook, Circuit Judge.  When Donald
Weinhoeft entered bankruptcy proceedings,
one asset of his estate was a wrongful-
discharge suit against Union Planters
Bank, his former employer. That suit
eventually settled for $165,000 in cash,
plus the Bank's release of any claims
against Donald and his wife Anita as a
creditor in their bankruptcies. Donald
contends that $40,000 of the settlement
proceeds is exempt from creditors' claims
and should be turned over to him, because
it represents the value of pension
contributions that the Bank would have
made, had his employment continued. The
bankruptcy judge, and then the district
judge, rejected this contention. In this
appeal--which is within our jurisdiction
under 28 U.S.C. sec.158(d) even though
the bankruptcy proceedings are ongoing,
see In re Baker, 768 F.2d 191 (7th Cir.
1985)--the Weinhoefts contend that it is
the Trustee's burden to prove that
settlement proceeds should not be
allocated to pension claims, rather than
the debtors' burden to demonstrate that
they should be. The settlement agreement
is silent on the matter, so the
Weinhoefts think that they must prevail.
Yet the burden of persuasion matters only
if it is possible to exempt cash from the
estate. That depends on the language of
the Bankruptcy Code and the statutes to
which it points.

   The Code provides two sources of

exemption authority potentially relevant to the Weinhoefts' position. The first, 11 U.S.C. sec.541(c)(2), says that the bankruptcy process respects any "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law". "[A]pplicable nonbankruptcy law" includes both state and federal provisions, see Patterson v. Shumate, 504 U.S. 753 (1992), which means that pension plans subject to the anti-alienation rule of erisa, see 29 U.S.C. sec.1056(d)(1), are not part of an estate in bankruptcy. Likewise any state law governing spendthrift trusts applies in bankruptcy. Illinois provides that retirement plans are exempt from creditors' claims. 735 ILCS sec.5/12-1006. To the extent that this statute speaks to pensions regulated by erisa it is preempted (but redundant); to the extent it deals with individual retirement accounts, church plans, and other assets outside the scope of erisa, it is not preempted, see Reliance Insurance Co. v. Zeigler, 938 F.2d 781 (7th Cir. 1991), and may supply "applicable nonbankruptcy law" for purposes of sec.541(c)(2). The second possible source of authority is 11 U.S.C. sec.522(b)(2)(A), which allows debtors to shelter from creditors' claims "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition". Once again the potential state exemption is 735 ILCS sec.5/12-1006. The $40,000 did not enter a trust, so sec.541(c)(2) does not avail the Weinhoefts. Thus everything depends on sec.522(b)(2)(A) and the scope of the exemption in Illinois law.

Section 5/12-1006 reads:
(a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter

amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(b)  "Retirement plan" includes the following:

(1)  a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;

(2) a government or church retirement plan or contract;

(3) an individual retirement annuity or individual retirement account; and

(4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(c) A retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, is conclusively presumed to be a spendthrift trust under the law of Illinois.

This statute covers two kinds of entitlements: rights "to the assets held in" pension plans, and rights to "receive pensions . . . under a retirement plan". The Weinhoefts do not claim any rights to assets held in a plan; the $165,000 was paid in cash to the Trustee in bankruptcy. Nor do they claim shelter for a right to receive anything from a retirement plan, a term defined by sec.5/12-1006(b).

  What the Weinhoefts instead argue is that $40,000 would have been placed in a pension plan, had Donald not been fired. Maybe so, but neither erisa nor sec.5/12-1006 asks what would or could have happened. These statutes apply an anti-alienation rule (or, under state law, the rule for spendthrift trusts) to assets that actually entered pension plans-- and, for employees in the private sector, only tax-qualified plans at that. None of the $165,000 could be excluded from Donald Weinhoeft's income as a

contribution to a pension plan (nor could or does he argue that $40,000 was "intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986" within the meaning of sec.5/12-1006(a)(i)).

Federal cases such as Patterson and, e.g., Guidry v. Sheet Metal Workers National Pension Fund, 493 U.S. 365 (1990), apply erisa's anti-alienation rule mechanically: A pension trust is inalienable no matter how strong the creditor's equitable claim to the money, and funds not in pension trusts are alienable no matter how much the debtor would prefer to keep the value out of creditors' hands. The proof of this is the rule that as soon as funds are withdrawn from a plan, creditors can reach them freely. See Velis v. Kardanis, 949 F.2d 78, 82 (3d Cir. 1991). We see no reason why sec.5/12-1006 should be construed to cover funds that are outside retirement plans. It evidently was designed to track erisa to the extent the Supremacy Clause allows states to regulate in this field. The Weinhoefts do not cite, and we could not find, any decision of an Illinois court applying sec.5/12-1006 to assets that might have entered a retirement plan but didn't; nor have they pointed to any decision construing a similar statute in any of the other 49 states in such a manner. The case on which the Weinhoefts principally rely, Auto Owners Insurance v. Berkshire, 225 Ill. App. 3d 695, 588 N.E.2d 1230 (2d Dist. 1992), dealt with funds received from a pension plan for current support, not with funds that never entered a pension plan.

So the question is not how the funds for the settlement were or could have been allocated by agreement between Donald Weinhoeft and his former employer. Such an allocation, whether informal or express, could be used to gyp creditors. It is not origin but destination that matters. If settlement funds are deposited in a retirement plan covered by either erisa or state law such as sec.5/12-1006, then they are exempt from creditors' claims as long as they remain in that plan. But cash on hand is not shielded from creditors' claims by sec.541(c)(2), erisa, or sec.5/12-1006 in conjunction with sec.522(b)(2)(A).

Affirmed