SECOND DIVISION
MARCH 28, 2006

No. 1-04-1110

| | | |
|---|---|---|
| BRIAN DOWLING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO OPTIONS ASSOCIATES, | ) | |
| INC., a Delaware Corporation, | ) | No.  96 CH 4430 |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| (Michael E. Davis, | ) | The Honorable |
| | ) | John K. Madden, |
| Defendant-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the opinion of the court.

This appeal comes to us from supplementary proceedings instituted by the plaintiff, Brian Dowling, to enforce underlying judgments totaling $817,830.45, against the defendants, Chicago Options Associates, Inc. (COA), and Michael E. Davis.  As a result of the supplementary proceedings, the circuit court entered a series of turnover orders directed to Davis and to third parties holding Davis's assets.  On appeal, Davis argues that the assets subject to the turnover orders were exempt or were otherwise improperly given to Dowling.

BACKGROUND

COA was engaged in the business of trading on the Chicago Mercantile Exchange. Davis was a shareholder and employee of COA, while Dowling was a trader employed by COA. In May 1995, the parties entered into an agreement (the 1995 Agreement) revising the compensation Dowling was to receive from COA in contemplation of Dowling investing in and becoming a shareholder of COA. However, the investment and shareholder discussions broke down and a dispute arose concerning the compensation Dowling was due under the 1995 Agreement. In May 1996, Dowling filed suit against COA and Davis seeking a portion of COA's profits, plus interest, from 1994 through the 1995 Agreement's termination date. A bench trial was subsequently held and in May and October 2002, the circuit court entered judgments totaling $817,830.45 in favor of Dowling. We take judicial notice that Davis and COA appealed from the underlying judgment, No. 1-03-3350, but their appeal was dismissed on June 14, 2004.

In January 2003, Davis's ex-wife and minor children moved to Florida and the children began attending school. In February 2003, Davis and his wife moved from Chicago, Illinois, to Florida, purchased a home, and applied for Florida driver's licenses. Davis and his wife also applied for a Florida real estate homestead tax exemption.

In March 2003, Dowling instituted supplementary proceedings against Davis and attempted to serve Davis at his residence in

Chicago; however, because Davis had moved to Florida, service was not completed.  On August 27, 2003, Dowling issued a citation notice to a third party, North Shore Community Bank and Trust (North Shore Bank), because Dowling's attorney had learned that Davis's residence in Chicago was actually owned by 4637 Manor, LLC (Manor LLC), and in the fall of 2002, Davis had obtained a $1.6 million loan from North Shore Bank using assets held by Manor LLC to purchase his residence in Florida.  On September 1, 2003, Dowling issued a citation notice to a third party, Northwestern Mutual Life Insurance Company (Northwestern Mutual).  Later, on September 19, 2003, Dowling issued citation notices to two other third parties: Schwab International (Charles Schwab), and Strategic Capital Trust Company.  These citations concerned funds in a single account established with Strategic but held in a Schwab brokerage account.  On September 23, 2003, Dowling issued a citation notice to Davis in care of attorney Landis.

On September 30, 2003, Dowling presented a motion for a turnover order for the cash value of Davis's Northwestern Mutual life insurance policy (the life insurance policy).  The life insurance policy had been established in 1992, had a net benefit of $587,067, and, on September 17, 2003, had a net surrender value of $95,059.58.  The beneficiary of the life insurance policy was listed as the "Davis Trust."[1]  The document

---

[1] We acknowledge that in Northwestern Mutual's answer to

1-04-1110

establishing the Davis Trust stipulated that it was irrevocable and directed the trustee to distribute the trust estate, including any assets from Davis's life insurance policy, in equal parts to Davis's children.  Pursuant to the citation issued to Davis in care of attorney Landis, attorney Landis appeared in court on September 30, 2003, and procured the entry of a briefing schedule on Dowling's motion for the entry of a turnover order directed to Northwestern Mutual.

---

Dowling's citation, an affidavit represents that the "direct beneficiary" of Davis's life insurance policy is the "trustee of the Davis Trust."  However, Davis's affidavit asserts that the beneficiary of the life insurance policy is the "Davis Trust," and we accept Davis's representation as the accurate one.

4

Around October 7, 2003, Davis learned that Dowling had issued a citation to Northwestern Mutual. Davis also spoke with attorney Landis, but Davis contends that attorney Landis did not tell him that a motion for turnover of the cash value of the life insurance policy had been filed with the court or that a briefing schedule had been set. As a result of learning about Dowling's citation to Northwestern Mutual, Davis contacted attorneys at DLA Piper Rudnick Gray and Cary (US), L.L.P. (Piper Rudnick), to determine the status of Dowling's supplementary proceedings.

On October 8, 2003, North Shore Bank delivered a copy of Davis's real estate sales contract from his home in Florida to Dowling. The contract disclosed Davis's current address, and on October 31, 2003, Dowling issued a citation to Davis at his address in Florida.

On October 21, 2003, Dowling presented a revised motion for turnover order directed to Northwestern Mutual. The circuit court granted Dowling's motion instanter and entered a turnover order directing Northwestern Mutual to turn over the cash value of Davis's life insurance policy.

On November 3, 2003, on Dowling's unopposed motion, the circuit court entered an order imposing a lien on Davis's membership interest in Manor LLC. The circuit court also ordered Davis to "cause the delivery of any and all certificates and/or evidence of Davis's membership interest in the [Manor] LLC to [Dowling]." Also on November 3, 2003, because Davis did not

5

appear in response to the citation served upon attorney Landis, the circuit court, on Dowling's motion, entered an order of contempt against Davis, as well as a bench warrant for his arrest.

On November 12, 2003, pursuant to a citation to discover assets issued to Charles Schwab, and on Dowling's unopposed motion, the circuit court entered a turnover order directing Charles Schwab to deliver the full cash surrender value of Davis's individual retirement account (IRA) to Dowling. On November 14, 2003, Dowling presented the circuit court with a motion for a turnover order directed to Scudder Investments[2] requesting that the circuit court order Scudder Investments to turnover the net value of Davis's 401(k) retirement plan (410(k)).

On November 19, 2003, Dowling filed a motion in the circuit court for turnover orders directed to Davis's membership interest

[2] Although the turnover order must have been entered in accordance with a citation issued to Scudder, we are unable to locate the citation in the record. However, Davis does not raise the absence of this citation as an issue.

in Buckhorn Ranch, LLC (Buckhorn Ranch), and his stock in Boomis, Inc. (Boomis). Dowling asked the circuit court to order Davis to turnover his membership interests and stock directly to Dowling.

Also on November 19, 2003, Davis submitted to the circuit court's jurisdiction and filed a motion to vacate the turnover order directed to Northwestern Mutual, claiming that the cash value of the life insurance policy was exempt. Piper Rudnick also filed a motion to vacate the turnover order directed to Charles Schwab, asserting that the account was exempt under Florida law and, alternatively, under Illinois law. Davis also requested that the circuit court vacate its contempt order and quash the arrest warrant issued for him. In support of his motions, Davis attached an affidavit which stated that he had moved to Florida in early 2003 because his ex-wife and children moved there. Davis's affidavit also stated that once in Florida he and his current wife purchased a home, applied for a homestead exemption, procured driver's licenses, and applied for voting cards. Davis's affidavit stated that he did not learn that Dowling was attempting to obtain the cash value of his Northwestern Mutual life insurance policy until October 7, 2003. Davis's affidavit also asserted that although attorney Landis was his attorney during the proceeding which resulted in the underlying judgment, he never authorized attorney Landis to appear on his behalf during the supplementary proceedings.

On November 20, 2003, the circuit court set a combined briefing schedule on the parties' motions. Subsequently, on December 9, 2003, Davis filed a declaration of exemptions listing the assets he believed were exempt from judgment, that is, the cash value of the life insurance policy, the IRA, the 401(k), personal property up to $1,000, and Davis's home in Florida. On December 22, 2003, Davis requested that the circuit court also consider a motion to modify the turnover order entered on November 3, 2003, directed to his membership interest in Manor LLC, in order to eliminate that portion of the circuit court's order which required him to deliver his ownership interest in Manor LLC directly to Dowling.

On April 13, 2004, the circuit court denied Davis's motion to vacate the turnover orders directed to Northwestern Mutual and Charles Schwab, denied Davis's motion to modify the turnover order directed to his interest in Manor LLC, granted Dowling's motion for a turnover order directed to Scudder Investments, and granted Dowling's motions for the turnover directed to Davis's membership interest in Buckhorn Ranch and his stock in Boomis.

Davis now appeals. We note that although Davis had the option of staying the collection proceedings by filing an appeal bond, he did not, and as a result, Dowling has collected the subject assets and several of the assets have been liquidated in partial satisfaction of the underlying judgment.

ANALYSIS

8

## I. Jurisdiction

Davis's brief first contends that the circuit court's turnover orders directed to third parties Northwestern Mutual, Charles Schwab, and Scudder Investments were void, because the citation issued to attorney Landis did not constitute personal service upon him, and thus, the circuit court did not have jurisdiction over him. At oral argument, however, Davis's attorney conceded that because Dowling, as the judgment creditor, issued citations to third parties in an effort to collect on the underlying judgment, there was no jurisdictional issue regarding the third-party citations.

Section 2-1402 of the Code of Civil Procedure provides a mechanism by which a judgment creditor may initiate supplementary proceedings, against a judgment debtor or a third party, to discover the assets of a judgment debtor and apply those assets to satisfy an underlying judgment. 735 ILCS 5/2-1402 (West 2002); Bloink v. Olson, 265 Ill. App. 3d 711, 714, 638 N.E.2d 406 (1994). These proceedings may be initiated only after the circuit court enters an underlying judgment. Specifically, section 2-1402 allows

>  "[a] judgment creditor *** to prosecute
>  supplementary proceedings for the purposes of
>  examining the judgment debtor or any other
>  person to discover assets or income of the
>  debtor not exempt from the enforcement of the

judgment."  735 ILCS 5/2-1402 (West 2002). The provisions of section 2-1402 are to be liberally construed, and the statute gives the court broad powers to compel the application of discovered assets or income in order to satisfy a judgment.  Bentley v. Glenn Shipley Enterprises, Inc., 248 Ill. App. 3d 647, 651, 619 N.E.2d 816 (1993).  Relatedly, Supreme Court Rule 277 provides:

> "(a) When Proceeding May be Commenced and Against Whom; Subsequent Proceeding Against Same Party.  A supplementary proceeding authorized by section 2-1402 *** may be commenced at any time with respect to a judgment which is subject to enforcement. The proceeding may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor. ***
>
> (b) How Commenced.  The supplementary proceeding shall be commenced by the service of a citation on the party against whom it is brought."  (Emphasis added.)  134 Ill. 2d R. 277.

In this case, Dowling, in conformity with statute and the supreme court rules, served third parties - Northwestern Mutual, Charles Schwab, and Scudder Investments - with citations to

10

discover Davis's assets. Because Dowling complied with the rules regarding service on third parties in supplementary proceedings, there is no jurisdictional issue concerning these third parties, regardless of whether service on attorney Landis constituted service on Davis. As such, we will not comment on whether Davis was properly served through attorney Landis because the orders entered against Davis personally, the finding of contempt and warrant for his arrest, were vacated by the circuit court.

## II. Assets Subject to Turnover

At oral argument, the parties also clarified the issues presented in their briefs. The only issue pertinent for our review, however, is whether the turnover orders directed to Davis's Northwestern Mutual life insurance policy, his IRA, his 401(k), and his various stock certificates were properly entered.

### 1. Waiver

However, before determining whether the circuit court's turnover orders were proper, we must address Dowling's arguments that Davis waived any exemptions he may have been able to claim by failing to appear at, or to claim exemptions at, the September 30, 2003, citation hearing. Davis asserts that he did not waive any exemptions applicable to the contested assets and that "[t]he circumstances surrounding the timing of [his] assertion of these exemptions do not support a finding that [he] waived his exemption rights."

As previously stated, section 2-1402 sets forth the procedure to be followed in supplementary proceedings. 735 ILCS 5/2-1402 (West 2002); In re Marriage of Murphy, 338 Ill. App. 3d 1095, 1097, 792 N.E.2d 12 (2003). Pursuant to section 2-1402(l), a judgment debtor may appear at a citation hearing to seek a declaration that certain assets are exempt or may request, before the return date specified on the citation, a hearing to declare certain income and assets exempt. 735 ILCS 5/2-1402(l) (West 2002). Section 2-1402 does not, on its own, confer any substantive rights or exemptions on the judgment debtor as those must be affirmatively asserted by the judgment debtor. See Murphy, 338 Ill. App. 3d at 1097. We also note that section 2-1402(b) does not specifically set a time limit for claiming exemptions, and citations are required to remind judgment debtors that "income or assets that may be applied toward the judgment is limited by federal and Illinois law," and that "THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH." (Capitalization in original.) 735 ILCS 5/2-1402(b) (West 2002).

In Guess?, Inc. v. Chang, 912 F. Supp. 372, 379 (N.D. Ill. 1995), the judgment debtor appealed a magistrate judge's finding that a motion to claim exemptions from a citation to turnover assets was untimely. The Guess? court concluded that although section 2-1402 "does not lay out a specific time limit for claiming exemptions," the judgment debtor had waived his right to

12

claim a specific statutory exemption to the citation. Guess?, 912 F. Supp. at 379. The Guess? court based its decision on the facts that (1) the judgment debtor had personally received a citation notice in March 1995, (2) was advised personally by the magistrate judge of the significance of the postjudgment proceedings in April 1995, and (3) despite the judgment debtor's knowledge, no exemption was claimed until August 1995, six months after receiving the citation notice and five months after being warned of its importance.

In this case, on October 7, 2003, Davis learned that Dowling had issued a citation to Northwestern Mutual in an attempt to obtain the cash value of Davis's life insurance policy. Davis then instructed his attorneys at Piper Rudnick to determine the status of Dowling's supplementary proceedings. In November 2003, Piper Rudnick filed a motion seeking to vacate the turnover orders directed to Northwestern Mutual and Charles Schwab, claiming, inter alia, that the assets were exempt. Subsequently, on December 9, 2003, Davis filed a declaration of exemptions.

We find Guess? distinguishable from the facts of this case. We first note that the circuit court never determined that waiver applied. Also, we note that when Davis learned that citations had been issued to third parties, he acted quickly to hire attorneys to determine the status of the supplementary proceedings. A month after Piper Rudnick began its inquiry, Davis began claiming that some of the assets sought were exempt.

Piper Rudnick's inquiry culminated with the filing of a declaration of exemptions.  Thus, we do not think that Davis's actions were as egregious as the debtor's lack of action in Guess?.  As such, we find that Davis did not waive his right to claim the disputed assets as exempt.

We now address the crux of this appeal, whether several of the assets the circuit court ordered for turnover - a life insurance policy, an IRA account, and the assets in a 401(k) plan - were exempt from such an order.

2. Northwestern Mutual Life Insurance Policy

In November 1992, Davis purchased a whole-life insurance policy from Northwestern Mutual with the beneficiary of the life insurance policy listed on the policy as the "Davis Trust." Davis contends that the cash value of his life insurance policy is exempt from creditors because a separate trust document ordered the trustee of the Davis Trust to distribute the assets of the Davis Trust to the beneficiaries of the Davis Trust, that is, Davis's minor children.  Davis cites section 12-1001 of the Code of Civil Procedure, which outlines what personal property is exempt from judgment, as support.  735 ILCS 5/12-1001 (West 2002).  Conversely, Dowling argues that in Illinois there is no automatic exemption for life insurance proceeds for which the sole beneficiary is a trust.  Dowling emphasizes too that, although the trustee of the Davis Trust would have control over future proceeds from the life insurance policy, Davis maintained

control of the life insurance policy until his death.

Whether section 12-1001 exempts Davis's life insurance policy is a question of statutory interpretation which we review de novo. Itasca Bank & Trust Co. v. Thorleif Larsen & Son, Inc., 352 Ill. App. 3d 262, 265, 815 N.E.2d 1259 (2004). As such, we begin our analysis by reviewing the relevant statutory authority. Section 12-1001 states:

> "The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> ***
>
> (f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not[.]" 735 ILCS 5/12-1001(f) (West 2002).

The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. In

re Estate of Dierkes, 191 Ill. 2d 326, 331, 730 N.E.2d 1101 (2000). In determining legislative intent, a court should first consider statutory language. Dierkes, 191 Ill. 2d at 331. The plain language of section 12-1001 makes clear that the aggregate net cash value of a life insurance policy will be exempt "whether the power to change the beneficiary is reserved to the insured or not," so long as the policy proceeds are payable to the insured's spouse or dependents. 735 ILCS 5/12-1001(f) (West 2002). The decisive issue, then, is not the power of the insured to change the beneficiary but, instead, the nature of the relationship between the beneficiary and the insured. In applying section 12-1001 to the present case, we reject Dowling's argument that Davis's power to change the beneficiary of his life insurance policy is the determinative factor in characterizing the asset. Instead, we must look at whom Davis designated as the beneficiary of his life insurance policy to determine whether the asset is exempt under the statute.

In this case, Davis designated the "Davis Trust" as the beneficiary of his life insurance policy. Therefore, to determine whether Davis's life insurance policy is exempt from judgment, we must decide whether Davis's designation of the "Davis Trust" as the beneficiary of the life insurance policy enabled the life insurance policy to qualify as an exempt asset pursuant to section 12-1001. Davis argues that there is no legislative history that indicates that the legislature intended

16

to exclude from exemption insurance policies in which a trust is the beneficiary for the irrevocable benefit of minor children of the insured.  However, Davis fails to provide authority for his proposition; nor are we persuaded by his argument.

In section 12-1001(f), the legislature outlined that in order for a life insurance policy to be exempt from judgment under section 12-1001, the proceeds of the policy must be payable (1) to a person, (2) that is the insured's "wife" or "husband" or is otherwise "dependent" on the insured.  735 ILCS 5/12-1001(f) (West 2002).  Specifically, the legislature stated that, in order for a debtor's life insurance policy to qualify as exempt, all proceeds of the debtor's life insurance policy shall be payable to "a wife or husband of the insured, or to a child, parent, or other person dependent on the insured."  735 ILCS 5/12-1001(f) (West 2002).  The legislature did not include nonperson entities, such as trusts, in its list of beneficiaries that would enable a debtor's life insurance policy to be given exempt status. Although the rules of statutory construction require that exemption statutes be liberally construed in favor of the debtor to effectuate the statutory purpose of providing the debtor with enough income to subsist and obtain a fresh start (In re Grace, 273 B.R. 570, 572 n.3 (Bankr. S.D. Ill. 2002)), when determining whether an asset qualifies for an exemption under section 12-1001, bankruptcy courts have demanded that a debtor demonstrate

that the asset meets the statute's requirements.  For example, when determining whether a "child, parent, or other person" is in fact "dependent" upon a debtor, the bankruptcy courts have demanded that the debtor demonstrate the beneficiary of his life insurance policy is, in fact, "dependent" upon him.  See In re Grace, 273 B.R. 570 (20-year-old son enrolled as a full-time college student was dependent upon his mother, the debtor insured, so as to entitle his mother to an exemption pursuant to section 12-1001); In re Sommer, 228 B.R. 674 (Bankr. C.D. Ill. 1998) (debtor, a 38-year-old quadriplegic, had two insurance policies naming his parents as beneficiaries, assets not exempt under section 12-1001 because parents were not financially dependent on son); In re Ellis, 274 B.R. 782 (Bankr. S.D. Ill. 2002) (exemption not applicable because beneficiary of life insurance policy, the debtor's cousin, was not dependent on the insured debtor).

In this case, the language of section 12-1001(f) is clear and unambiguous, and we must apply it without resort to further aids of statutory construction.  Andrews v. Kowa Printing Corp., 217 Ill. 2d 101, 106, 838 N.E.2d 894 (2005).  The facts of this case indicate that Davis purchased a life insurance policy from Northwestern Mutual and designated the beneficiary as the "Davis Trust."  Looking at the four corners of Davis's life insurance policy, it is clear that the beneficiary listed, the "Davis Trust," is not "a wife or husband of the insured, or a child,

parent, or other person dependent on the insured."  Therefore, in accordance with the statute, Davis's life insurance policy cannot be characterized as an exempt asset pursuant to section 12-1001(f).  735 ILCS 5/12-1001(f) (West 2002).  We therefore affirm the circuit court's turnover order related to Davis's life insurance policy.

### 3. IRA/ 401(k) Accounts

Davis established an IRA through Charles Schwab in 1998 and a 401(k) plan through Scudder Investments in 1991.  Davis argues that the balances of his IRA and 401(k) accounts fall within the protection of Section 12-1006 of the Code of Civil Procedure (735 ILCS 5/12-1006 (West 2002)) and qualify as exempt assets.  Dowling acknowledges that section 12-1006 generally exempts retirement assets from the claims of creditors, but asserts that "this general exemption does not protect assets that were fraudulently conveyed or transferred into an otherwise exempt retirement plan."

Whether Davis's IRA and 401(k) qualify as exempt assets is a question of statutory construction, which we review de novo. Itasca Bank, 352 Ill. App. 3d at 265.  In pertinent part, section 12-1006 provides:

> "(a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement

19

plan is exempt from judgment, attachment, execution,
distress for rent, and seizure for the satisfaction of
debts if the plan (I) is intended in good faith to
qualify as a retirement plan ***.

(b) 'Retirement plan' includes the following:

(1) a stock bonus, pension, profit sharing,
annuity, or similar plan or arrangement, including
a retirement plan for self-employed individuals or
a simplified employee pension plan;

***

(3) an individual retirement annuity or
individual retirement account[.]"  735 ILCS 5/12-
1006(a), (b)(1), (b)(3) (West 2002).

Section 12-1006 has also been analyzed in such a way as to
protect a debtor's interest in proceeds traceable to pension plan
payments and a debtor's right to receive benefits, distributions,
refunds of distributions, or other payments under a retirement
plan.  See Auto Owners Insurance v. Berkshire, 225 Ill. App. 3d
695, 588 N.E.2d 1230 (1992); In re Marriage of Thomas, 339 Ill.
App. 3d 214, 227, 789 N.E.2d 821 (2003).

In Auto Owners, the plaintiff argued that the defendant had
lost the exemption applicable to his retirement funds because the
defendant deposited the funds into a personal checking account.
The circuit court agreed, finding that because the defendant
deposited the retirement funds into a personal checking account

and they were being used for his individual use, the funds were no longer exempt. The defendant appealed, presenting as the issue whether the asset subject to the turnover order, that is, funds deposited into a personal checking account and traceable to the proceeds of a retirement benefit, were exempt. Auto Owners, 225 Ill. App. 3d at 696-97.

The Auto Owners court explained that section 12-1006 protects a debtor's interest in "the assets" and a debtor's right "to receive" benefits, distributions, refunds of distributions, or other payments under a retirement plan, but lamented that in this case, the circuit court had failed to explain the pay out of the defendant's pension plan. Auto Owners, 225 Ill. App. 3d at 698. The Auto Owners court also explained that even if the retirement funds were originally exempt, their exempt status could be lost depending on the character of the payment. Auto Owners, 225 Ill. App. 3d at 698-99. The Auto Owners court clarified that if the funds represented a payment of the defendant's total accrued benefits as a lump-sum distribution, then the funds could be held for future use and investment, rather than for support. Auto Owners, 225 Ill. App. 3d at 701. On the other hand, because the purpose of section 12-1006 is to protect income necessary for the support of the debtor and his family, if the payment was a periodic pension benefit intended for current support, the funds were exempt and remained so because the defendant deposited them into an account retaining

21

the quality of the funds.  Auto Owners, 225 Ill. App. 3d at 701.  Because the record was unclear, the Auto Owners court remanded to the circuit court to make a finding regarding the defendant's pension plan payout.  Auto Owners, 225 Ill. App. 3d at 701.

In this case, once Davis believed his IRA and 401(k) accounts were exempt, he had an obligation to inform the court and ask for a citation hearing in which to claim any applicable exemptions.  735 ILCS 5/2-1402 (West 2002).  Davis, through his attorneys at Piper Rudnick, did just that.  However, the circuit court never held a citation hearing to consider whether these assets should be classified as exempt, and never made evidentiary findings regarding the assets' exempt natures.  Instead, the circuit court ordered Davis to turn over the funds in his IRA and 401(k) plans to Dowling.

We find Davis's assertion that his IRA and 401(k) plans qualify as exempt assets to have raised a substantial question. Unlike the issue presented regarding Davis's life insurance policy, here, the statute supports, rather than undercuts, Davis's assertion of an exemption.  As such, we find that the circuit court erred by failing to conduct a citation hearing to consider Davis's claimed exemptions.  Therefore, as in Auto Owners, we remand this issue to the circuit court for a citation hearing at which time Davis can assert that his IRA and 401(k) accounts are exempt, and Dowling can have the opportunity to present any claims to the contrary.

22

### 4. Stock Interests

In Davis's final argument, he concedes that his interests in Manor LLC, Buckhorn Ranch, and Boomis were subject to Dowling's collection efforts; however, Davis asserts that he should not have had to make a direct conveyance of his ownership interests in those entities to Dowling. Davis asserts that the assets should have been collected by the sheriff and sold at public sale. 735 ILCS 5/2-1402(e) (West 2002).

A similar factual scenario was discussed in In re Marriage of Pick, 167 Ill. App. 3d 294, 521 N.E.2d 121 (1988). In Pick, a husband and wife were in the process of divorcing, and the circuit court entered an order restraining either party from removing property from the marital home. Nonetheless, a substantial amount of assets disappeared from the marital home and, as a result, the court appointed a neutral third-party attorney to act as a sequestrator. Thereafter, on several occasions the court ordered the sequestrator to remove certain items from storage and arrange for their sale. Pick, 167 Ill. App. 3d at 297-98.

On appeal, the Pick court determined that the circuit court did not have the authority to seize and force the sale of personal property by a neutral third party. The Pick court looked to the applicable statutory language:

> "'All property ordered to be
> delivered up [by the judgment debtor]

23

shall *** be delivered to the sheriff to be collected by the sheriff or sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment.'" Pick, 167 Ill. App. 3d at 302, quoting Ill. Rev. Stat. 1985, ch. 110, par. 2-1402(c) (now see 735 ILCS 5/2-1402(e) (West 2002)).

The Pick court noted that the sale of personal property by a private party was not provided for in section 2-1402; rather, section 2-1402(e) "mandates that property to be sold to satisfy a judgment shall be delivered to the sheriff for public sale." Pick, 167 Ill. App. 3d at 302. The Pick court then concluded that the circuit court's order authorizing a neutral third party to arrange for the sale of property was in error because the sheriff was the only party authorized by statute to enforce judgments through the sale of personal property. Pick, 167 Ill. App. 3d at 302.

We find the facts of this case similar to those of Pick, and note that the language in section 2-1402(e) controls the outcome of this issue. Here, the circuit court ordered Davis to turn over his ownership interests in Manor LLC, Buckhorn Ranch, and Boomis directly to Dowling. The circuit court's order was entered in error because section 2-1402(e) mandates that a

24

judgment debtor turn over personal property subject to collection to the sheriff for public sale. As stated earlier, Davis does not dispute that his ownership interest in Buckhorn Ranch, Boomis, and Manor LLC were capable of being collected by Dowling; instead, Davis argues that the judgment order was not entered in conformity with the statute. It is unclear from the record and from answers given at oral argument whether Dowling has sold Davis's interests in Manor LLC, Buckhorn Ranch, and Boomis. If these assets have been sold, Davis should be given credit for the fair market value of the assets against the underlying judgment. However, if the assets have not been sold, then the circuit court should enter a revised order directing Dowling to turn the assets over to the sheriff, who will conduct a public sale of the assets.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's turnover order relating to Davis's life insurance policy. Regarding Davis's IRA and 401(k) accounts, due to the absence of evidentiary findings by the circuit court regarding the assets, we remand for a citation hearing on the issue of whether these funds are exempt. Finally, regarding Davis's stock interests, we remand with instructions as outlined in this opinion.

Affirmed in part and remanded with instructions.

WOLFSON and HALL, JJ., concur.

25