In the Matter of the Estate of Carl Jorgensen,
a/k/a Holger C. Jorgensen, Deceased.
William Goldammer, Claimant-Appellant, v. Edward
Fredricks, Administrator with the Will Annexed of
the Estate of Carl Jorgensen, Deceased, Defendant-
Appellee.

Gen. No. 50,641.

First District, Second Division.

May 10, 1966.

Sidley, Austin, Burgess & Smith, of Chicago (Alice M. Bright, George W. McBurney, Arthur F. Staubitz and Sylvia O. Decker, of counsel), for appellant.

Earl B. Lichten, of Chicago, for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a final order entered against claimant, William Goldammer, said order sustaining an amended motion to dismiss filed by defendant Edward Fredricks, Administrator with the Will Annexed of the Estate of Carl Jorgensen, deceased.

In 1923, decedent, Carl Jorgensen, a brother-in-law of claimant William Goldammer, borrowed sums from Adolph Goldammer and Mrs. Adolph Goldammer, claimant's father and mother, and from Goldammer Brothers, a partnership consisting of claimant and his brother, Otto Goldammer. These loans, which were invested in a bowling enterprise, were evidenced by four promissory notes, one payable to the order of A. Goldammer in the amount of $600; one payable to the order of Mrs. Goldammer in the amount of $2,000; and two payable to the order of Goldammer Brothers in the amount of $1,700 and $1,000 respectively. The notes were payable on demand, each bearing interest at the rate of six percent per annum after date, and each containing the following provision:

> . . . and to secure the payment of said amount I hereby authorize, irrevocably, any attorney of any Court of Record to appear for me in such Court, in term time or vacation—*at any time after maturity,* and confess a Judgment without process, in favor of the holder of this Note . . . . (Emphasis added.)

In 1943 claimant purchased from his mother, Minnie Goldammer, the two notes made payable to her and her late husband, with checks totaling $7,805, said sums representing the principal plus compound interest due on the notes to that date. The other two notes were acquired by claimant from Goldammer Brothers. In 1957 claim-

ant demanded payment on all four notes from decedent, in a total sum, including interest, of $15,919.

Allegedly at the time of claimant's demand in 1957, decedent acknowledged that the amount demanded was due and owing, but stated that he wished to retain the funds to play the market. Furthermore, it was also alleged that claimant and decedent entered into an oral agreement whereby claimant would forbear his right to confess judgment on the notes; that decedent would pay, upon demand, the aggregate amount then due and owing, together with six percent interest thereon, if he were able to do so; that if upon demand, decedent were unable to pay, he would provide by his will for the payment of the aggregate amount; and that decedent and his wife would deliver 23.625 shares of Dearborn-Jackson Recreations, Inc. stock to claimant as collateral security for decedent's obligation to claimant. Pursuant to this agreement, a certificate representing 23.625 shares of stock of Dearborn-Jackson Recreations, Inc., registered in the name of decedent's wife, was delivered to claimant.

Shortly before Christmas 1963, claimant demanded payment from decedent, of the total amount, which then amounted to $22,525.33. Decedent allegedly acknowledged that this amount was due but stated that he still wished to retain the funds. At that time, claimant and decedent allegedly entered into a second oral agreement whereby claimant agreed to forbear his right to sue to enforce payment of decedent's obligation and decedent agreed to provide by will for payment to claimant at the time of decedent's death of the sum of $22,525.33, together with interest thereon at the rate of six percent per annum.

Claimant's theory of the case is that the trial court erred in dismissing claimant's amended claim in (1) that the defense of the Statute of Limitations was waived by the warrant of attorney contained in the notes made

401

by decedent and his wife, (2) that decedent's delivery to claimant, in 1957, of 23.625 shares of stock of Dearborn-Jackson Recreations, Inc., as security for the debt evidenced by the notes made by decedent and his wife, constituted an unequivocal acknowledgment of the existence of the debt and a waiver of the defense of the Statute of Limitations and (3) that an action to enforce decedent's oral agreements with claimant to provide for payment of the notes by decedent's will is not barred by the Statute of Limitations in that said Statute of Limitations did not commence running until decedent died on February 20, 1964.

Defendant's theory of the case is that the claim against decedent's estate is barred by the Statute of Limitations in (1) that the confession of judgment clause in subject notes did not waive the Statute of Limitations, (2) that the alleged pledge of stock was insufficient to remove the bar of the Statute of Limitations and (3) that the alleged contract to make a will was without consideration and could be nothing more than an oral acknowledgement of the promissory note debt.

The applicable statutory provision, found in Ill Rev Stats (1963) c 83, par 17, reads as follows:

17. Writings—New Contract. § 16. Except as provided in Section 2–725 of the "Uniform Commercial Code," enacted by the Seventy-second General Assembly, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay. . . .

■ We agree with claimant's contention that decedent's delivery to claimant, in 1957, of 23.625 shares of stock of Dearborn-Jackson Recreations, Inc., as security of the debt constituted an unequivocal acknowledgment of the existence of the debt and a waiver of the defense of the Statute of Limitations.

In re Souder's Estate, 169 Pa 239, 32 A 417 (1895), a preexisting debt was held not barred by the Statute of Limitations, because the transfer of 140 shares of stock was a distinct acknowledgment of the debt from which a promise to pay was reasonably deducible.

■ The administrator's contention, that an unindorsed stock certificate is not part payment unless accompanied by an actual writing, is invalid. Lawrence v. I. N. Parlier Estate Co., 15 Cal2d 220, 100 P2d 765 (1940) ; People's Bank of Harrisville v. Continental Supply Co., 213 Ky 44, 280 SW 458 (1926). Payment may be established by parol evidence. Wright v. Stinger, 269 Ill App 224 (1933) ; Ott v. Flinspach, 143 Ill App 61 (1908) ; Lathrop v. Carrol, 155 Ill App 653 (1910) ; Thayer v. Bolender, 250 Ill App 16 (1928). Moreover, actual delivery of the certificate makes an indorsement unnecessary. The pledgee has an equitable lien upon the certificate and the shares it represents. See Dunscombe v. Crocker-Wheeler Elec. Mfg. Co., 249 NY Supp 223 (1931), and Brown v. Hotel Ass'n, 63 Neb 181, 88 NW 175 (1901).

■ It is true that a transferee has the right to compel an indorsement. The Uniform Commercial Code provides a "specifically enforceable right to have any necessary indorsement supplied." Illinois Rev Stats (1965) c 26, par 8–307. Likewise its predecessor, the Uniform Stock Transfer Act, Ill Rev Stats (1957) c 32, par 424, states:

> *Transfer of certificate without indorsement.* The delivery of a certificate by the person appearing by the certificate to be the owner thereof without

403

the indorsement requisite for the transfer of the certificate and the shares represented thereby, but with intent to transfer such certificate or shares, shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering, to complete the transfer by making the necessary indorsement. The transfer shall take effect as of the time when the indorsement is actually made. This obligation may be specifically enforced.

The indorsement, however, is necessary only for the transferee to become a "bona fide purchaser" as against third parties. As between the two parties here contending, delivery alone is sufficient to effect a transfer. The Uniform Commercial Code states that "against the transferor the transfer is complete upon delivery. . . ." Illinois Rev Stats (1965) c 26, par 8–307. Thus, the claimant could obtain title on the books of the corporation by reason of the delivery of the certificate in 1957. The pledge was, therefore, effective as a pledge and as an acknowledgment of the debt.

█ We find we are in disagreement with claimant's first contention that the confession of judgment clause waived the Statute of Limitations. We need not consider claimant's third contention.

For the above reasons, the order is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

The order is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

BRYANT, P. J. and BURKE, J., concur.