# Illinois Official Reports

## Appellate Court

*Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575

| | |
|---|---|
| Appellate Court Caption | WELLS FARGO BANK MINNESOTA, NA, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2002-C3, Plaintiff, v. ENVIROBUSINESS, INC., a Massachusetts Corp., d/b/a EBI Consulting, formerly d/b/a EBI Consultants, Defendant.–WELLS FARGO BANK MINNESOTA, NA, Plaintiff-Appellee, v. CRAIG J. WALKER, Defendant-Appellant (CIBC, Inc., Defendant-Appellee; 318 West Adams, LLC, and Steven Byers, Defendants). |
| District & No. | First District, Third Division <br> Docket No. 1-13-3575 |
| Filed | November 5, 2014 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from a supplementary proceeding commenced under section 2-1402 of the Code of Civil Procedure to enforce a monetary judgment against defendant, the appellate court upheld the trial court's order requiring defendant to turn over certain stock in non-Illinois corporations, since stock in such corporations is generally not exempt from levy under the governing provisions of the Uniform Commercial Code or from turnover pursuant to section 2-1402, and defendant failed to meet his burden of showing that the stock was exempt in his case; furthermore, the trial court did not err in ordering that the stock be delivered to plaintiff's attorney, "to be held in escrow" to give the parties an opportunity to agree upon a neutral broker to value and sell the stock, but in the absence of an agreement, the court could appoint a broker. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2004-L-10701, 2004-CH-3099 cons.; the Hon. Alexander P. White, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | A. Craig Fleishman, of Fleishman & Shapiro, PC, of Denver, Colorado, for appellant. |
| | Daniel S. Hefter, of Hefter Law, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1     This interlocutory appeal arises from supplemental proceedings filed by Wells Fargo Bank Minnesota, NA (Wells Fargo), to enforce a monetary judgment against Craig Walker. In those proceedings, commenced pursuant to section 2-1402 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1402 (West 2012)), the circuit court ordered Walker to turn over certain stock to Wells Fargo. On appeal, Walker asserts that the circuit court erred by ordering him to turn over stock in non-Illinois corporations and by denying his request to stay the enforcement of the turnover order. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     As a threshold matter, we note that the parties have entered into a stipulation to limit the record on appeal, likely due to the cumbersome nature of the proceedings below. Such stipulations are permitted by Illinois Supreme Court Rule 321(a) (eff. Feb. 1, 1994). Nonetheless, it remains the appellant's burden to present a sufficiently complete record. *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 113. The limited record before us does not contain the original complaint or the subsequently filed pleadings that led to the underlying judgment. Similarly, the parties' briefs improperly present facts without citation to the record. Ill. S. Ct. R. 341(h)(6), (i) (eff. Feb. 6, 2013). Thus, we are unable to say with certainty what claims were filed against any given party or even verify the accuracy of the caption on appeal. We further note that the record does not contain a report of proceedings. See Ill. S. Ct. R. 323 (eff. Dec. 13, 2005). While the record on appeal is sufficient to review most of the issues raised, we remind litigants that stipulating to a limited record pursuant to Rule 321 does not excuse them from supporting facts with citations to the record, as required by Rule 341, and that reviewing courts must be able to accurately comprehend the procedural context in which an appeal arises. See *In re Estate of Lundahl*, 332 Ill. App. 3d 646, 649 (2002).

¶ 4     It appears that on December 5, 2002, CIBC, Inc. (CIBC), issued an $11 million commercial mortgage loan to 318 West Adams, LLC (the borrower), secured by the

borrower's office building (the property). Walker was a principal on the loan, which was eventually sold to J.P. Morgan Chase Commercial Mortgage Securities Corporation (J.P. Morgan) and placed in an investment trust. In addition, Wells Fargo, as trustee, subsequently foreclosed on the property. Wells Fargo then purchased the property and sold it to a third party in July 2005.

¶ 5    Wells Fargo apparently filed a complaint against CIBC and Walker, as well as other parties not before us, after discovering that certain misrepresentations were made with respect to the loan and the property. Pertinent to this appeal, it appears that the circuit court entered judgment in favor of Wells Fargo and against Walker for approximately $18 million. The court also apparently entered judgment in favor of CIBC and against Walker for approximately $5 million. Walker then filed related appeals from that judgment (Nos. 1-13-2714, 1-13-2745, 1-13-2746 and 1-13-2763 (consolidated)). Walker did not, however, obtain a stay of the monetary judgment against him. Accordingly, on August 28, 2013, Wells Fargo pursued enforcement of that judgment by starting supplementary proceedings against Walker under section 2-1402 of the Code.

¶ 6    During those proceedings, Wells Fargo filed an amended motion for an order requiring Walker to turn over for sale his stock in 12 Colorado corporations. Wells Fargo alleged that with two exceptions, Walker owned 100% of each company. In addition, Wells Fargo asked that the court order Walker to turn over the stock to a business broker who could value and sell it. Wells Fargo suggested that if the parties could not agree on a broker, the court could select one. We further note that Wells Fargo also filed two collection proceedings against Walker in Colorado (case No. 2013-CV-30582; case No. 2013-CV-30490). Moreover, CIBC filed a "cross-motion for turnover order" in light of CIBC's judgment against Walker. CIBC asked that it be permitted to participate in the stock's valuation and sale.

¶ 7    In response, Walker argued that his stock held in Colorado corporations was exempt from turnover. Walker, relying on subsection 2-1402(j) of the Code (735 ILCS 5/2-1402(j) (West 2012)), argued that the circuit court lacked power to compel the delivery of property that was statutorily exempt from levy. Additionally, case law interpreting statutes found in article XII of the Code (see 735 ILCS 5/12-170 *et seq.* (West 2012)) had found non-Illinois stock to be property statutorily exempt from levy. Alternatively, Walker requested that the court permit him to deposit stock into the court's registry pending Walker's appeal from the judgment against him.

¶ 8    In reply, Wells Fargo argued that only three statutory exemptions from turnover existed: the homestead exemption (735 ILCS 5/12-901 *et seq.* (West 2012)), exemptions for certain personal property (735 ILCS 5/12-1001 (West 2012)), and the retirement plan exemption (735 ILCS 5/12-1006 (West 2012)). Accordingly, in its view, foreign stock was not exempt from turnover. Wells Fargo further argued that article XII of the Code was irrelevant because Wells Fargo had not sought an order of levy.

¶ 9    On November 18, 2013, the circuit court entered a written order requiring Walker to turn over his stock for sale. Specifically, the court ordered Walker to deliver the stock to Wells Fargo's attorney, "to be held by him in escrow" pending further order. The court also ordered the parties to attempt to agree upon a broker to sell the stock. If the parties failed to agree, however, the court could appoint a broker. In addition, the court granted CIBC's motion for turnover and permitted CIBC to participate in the valuation and sale process. Furthermore,

the court denied Walker's request to place the stock in the court's registry. Walker now appeals.[1]

¶ 10                                    II. ANALYSIS

¶ 11                          A. Turnover of Non-Illinois Stock

¶ 12    On appeal, Walker once again asserts that because stocks in non-Illinois corporations are exempt from levy, they are also exempt from turnover in supplemental proceedings under section 2-1402.

¶ 13    A citation to discover assets, also known as a supplementary proceeding, is the predominant procedure for enforcing judgments. Robert G. Markoff, Jeffrey A. Albert, Steven A. Markoff & Christopher J. McGeehan, *Citation to Discover Assets*, in Creditors' Rights in Illinois § 2.42 (Ill. Inst. for Cont. Legal Educ. 2014) (citing 735 ILCS 5/2-1402(c)). That procedure, found in section 2-1402 of the Code, provides judgment creditors with a mechanism to initiate supplementary proceedings against a judgment debtor or third party in order to discover the judgment debtor's assets and apply them to satisfy the underlying judgment. *Eclipse Manufacturing Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127, 133 (2007). To that end, this statute provides a circuit court with broad powers to compel parties to satisfy a judgment with discovered assets. *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009). Actions that a creditor may accomplish by another type of enforcement may be accomplished in supplemental proceedings, as a citation to discover assets has features of a creditor's bill, execution, garnishment, levy and sale. Robert G. Markoff, Jeffrey A. Albert, Steven A. Markoff & Christopher J. McGeehan, *Citation to Discover Assets*, in Creditors' Rights in Illinois § 2.42 (Ill. Inst. for Cont. Legal Educ. 2014). Additionally, supplemental proceedings are intended to be expeditious and efficient. *In re FBN Food Services, Inc.*, 158 B.R. 756, 761 (Bankr. N.D. Ill. 1993). The debtor bears the burden of demonstrating that property is exempt from being applied to satisfy a judgment. See *In re Marriage of Takata*, 383 Ill. App. 3d 782, 788 (2008).

¶ 14    Section 2-1402 states, in pertinent part, as follows:

    "(c) When assets or income of the judgment debtor not exempt from the satisfaction of a judgment, a deduction order or garnishment are discovered, the court may, by appropriate order or judgment:

        (1) Compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his or her possession or control, so discovered, capable of delivery and to which his or her title or right of possession is not substantially disputed.

                                        * * *

        (j) This Section does not grant the power to any court to order installment or other payments from, or compel the sale, delivery, surrender, assignment or conveyance of any property exempt by statute from the enforcement of a judgment thereon, a deduction order, garnishment, attachment, sequestration, process or other levy or seizure." 735 ILCS 5/2-1402 (West 2012).

---

[1]CIBC has adopted Wells Fargo's brief on appeal.

¶ 15    Wells Fargo, relying on *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 692-93 (2002), contends that we must review the circuit court's decision for an abuse of discretion because section 2-1402(c) provides that the court *may* order property to be turned over, which generally conveys discretion. With that said, Wells Fargo puts the proverbial cart before the horse. Section 2-1402(c) does not give the circuit court discretion to order the turnover of exempt property. Accordingly, Walker's contention that non-Illinois stock is statutorily exempt from turnover presents a legal question, which we review *de novo*. *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2014 IL 116362, ¶ 20.

¶ 16    Our primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *Goldfine*, 2014 IL 116362, ¶ 21. The most reliable indicator of such intent is a statute's plain language. *Id.* As a result, we cannot add limitations, exceptions, or conditions under the guise of statutory construction. *In re Minor Child Stella*, 353 Ill. App. 3d 415, 421 (2004). In addition, reviewing courts must consider all provisions of a statutory enactment as a whole. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 98. When a statute's language is clear and unambiguous, it must be applied without considering other aids of construction. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 19. Where a statute is ambiguous, however, we may look to other sources to determine the legislature's intent. *Bank of America, N.A.*, 2014 IL App (1st) 131252, ¶ 98. A statute is ambiguous where well informed persons could reasonably understand the statute in more than one manner. *Commonwealth Edison Co.*, 2014 IL App (1st) 132011, ¶ 21. Moreover, section 2-1402 must be liberally construed. *Stonecrafters, Inc.*, 393 Ill. App. 3d at 958. With these principles in mind, we must determine whether foreign stock is exempt from turnover.

¶ 17    Wells Fargo asserts that the only types of property exempt from satisfying a judgment pursuant to section 2-1402 are the homestead exemption, exemptions for certain enumerated items of personal property, and the retirement plan exemption, found, respectively, in sections 12-901, 12-1001 and 12-1006 of the Code (735 ILCS 5/12-901, 12-1001, 12-1006 (West 2012)). Wells Fargo, however, cites no legal authority in support of its interpretation of section 2-1402. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (requiring that argument contain citations to authority). In addition, the statute's plain language does not include the suggested limitation. Furthermore, while not pertinent to our appeal, subsection 2-1402(b) suggests a different interpretation. That provision, which contains the requisite citation notice form, enumerates both Illinois and federal exemptions and concludes, "The judgment debtor may have other possible exemptions under the law." 735 ILCS 5/2-1402(b) (West 2012). This demonstrates that the legislature did not contemplate a finite list of exemptions. See also Robert G. Markoff, Jeffrey A. Albert, Steven A. Markoff & Christopher J. McGeehan, *Instructions for Respondents Answering Citation to Discover Assets*, in Creditors' Rights in Illinois § 2.63 (Ill. Inst. for Cont. Legal Educ. 2014) (Exempt assets include receipts from pension and profit-sharing plans, social security payments, exempt portions of wages and disability payments.).

¶ 18    More importantly, Wells Fargo fails to acknowledge section 2-1402(j), the very subsection Walker claims provides him with an exemption from turnover. Despite the broad power granted to the court in supplemental proceedings, the plain language of subsection 2-1402(j) provides that an asset which is exempt from levy is also exempt from delivery and sale, *i.e.*, turnover. 735 ILCS 5/2-1402(j) (West 2012); see also *Cochennour v. Lofton*, 62 Ill.

App. 3d 955, 956 (1978) (finding under the prior version of that subsection that the supplemental proceedings provision does not authorize the court to order payments to be made from property that is statutorily exempt from attachment); *Collosseo v. Lynn*, 88 Ill. App. 3d 344, 346-47 (1980) (because bail bonds were exempt from garnishment, they were not subject to supplemental proceedings). While Wells Fargo argues that the two types of enforcement actions are meaningfully distinguishable, the legislature apparently found otherwise. As a result, we reject Wells Fargo's contention that it is irrelevant whether Walker's stock is statutorily exempt from levy.

¶ 19 Notwithstanding our rejection of Wells Fargo's position, we find section 2-1402(j) to be ambiguous with regard to whether "property exempt by statute" from levy refers to types of property that statutes expressly and categorically make exempt or whether such language includes property that cannot be levied upon by a creditor in certain circumstances due to a statute. Both interpretations find support. The former interpretation furthers section 2-1402's objective of making supplemental proceedings expeditious and efficient. *In re FBN Food Services, Inc.*, 158 B.R. at 761. On the other hand, "exempt property" generally means "[a] debtor's holdings and possessions that, by law, a creditor cannot attach to satisfy a debt." Black's Law Dictionary 653 (9th ed. 2009). Arguably, property may be statutorily exempt from levy where a statute makes it impossible for a creditor to levy upon it in particular circumstances. The parties have not addressed this ambiguity. In any event, we need not resolve the ambiguity in this appeal. Even under the latter interpretation of section 2-1402(j), which is more favorable to Walker, he has not demonstrated that his stock was statutorily exempt from levy.

¶ 20 Walker contends that non-Illinois stock is exempt from levy under article XII of the Code (735 ILCS 5/12-170 *et seq.* (West 2012)). *Cf. Dowling v. Chicago Options Associates, Inc.*, 365 Ill. App. 3d 341, 345, 354 (2006) (the debtor conceded that his stock was subject to collection). Wells Fargo agrees. The parties fail to address, however, the conflict between article XII of the Code and revised article 8 of the Uniform Commercial Code (UCC) (810 ILCS 5/8-101 *et seq.* (West 2012)), both of which purport to govern levy on stock. We first examine the former statutory scheme.

¶ 21                                  1. Article XII of the Code

¶ 22 Section 12-170, found in article XII, states that "[t]he share or interest of a stockholder in any corporation may be levied upon in the enforcement of a judgment, and sold as hereinafter provided." 735 ILCS 5/12-170 (West 2012). In addition, section 12-171, titled "Mode of levy on corporate stock," states as follows:

> "If the property has not been attached in the same action, the officer shall leave a copy of the judgment with the clerk, treasurer or cashier of the company, if there is such officer, otherwise with any officer or person having the custody of the books and papers of the corporation; and the property shall be considered as seized in the enforcement of the judgment when the copy is so left, and shall be sold in like manner as goods and chattels." 735 ILCS 5/12-171 (West 2012).

Section 12-173, titled "Certificate of corporate officer," also states, in pertinent part, that "[t]he officer of the company who keeps a record or account of the shares or interest of the stockholders therein, shall, upon the exhibiting to him or her of the certified copy of the judgment, be bound to give a certificate of the number of shares or amount of the interest

held by the judgment debtor." 735 ILCS 5/12-173 (West 2012). These provisions do not expressly state that non-Illinois stock is exempt, immediately placing doubt on Walker's contentions that such property is statutorily exempt.

¶ 23    Walker nonetheless contends that the effect of those provisions is to render out-of-state stock statutorily exempt from levy, relying on *Reid Ice Cream Co. v. Stephens*, 62 Ill. App. 334 (1895). In *Reid*, the appellate court held, "[t]he attempted levy upon and sale of the stock of this corporation, organized and existing under the laws of the State of New York, was nugatory. Shares of stock can be attached only in the State creating the corporation." *Id.* at 339. In reaching this conclusion, the reviewing court apparently agreed with the stockholder's reliance on section 53 of "An Act in regard to judgments and decrees ***" (Ill. Rev. Stat. 1893, ch. 77, ¶ 53), which was substantially similar to the present section 12-171, and section 55 (Ill. Rev. Stat. 1893, ch. 77, ¶ 55), which was substantially similar to the present section 12-173. *Reid Ice Cream Co.*, 62 Ill. App. at 338. The stockholder had apparently argued that because section 53 required an officer to leave a copy of the judgment with the person who had the corporation's books and papers, an Illinois constable could not levy upon the stock of a foreign corporation that maintained its records and papers outside of Illinois. *Id.* Accordingly, the reviewing court agreed with the shareholder's contention that the attempted levy and sale of a New York corporation's stock by leaving a copy of the judgment with the corporation's Chicago manager, who did not have custody over the corporation's books and papers, was invalid. *Id.* at 338-39. Furthermore, no officer of the corporation had provided a certificate reflecting the judgment debtor's number of shares, as required by section 55. *Id.* We note that *Reid* corresponds with the historical principle that the situs of stock is the state under whose laws the corporation was incorporated and that certificates were merely evidence of ownership. *Martin v. Central Trust Co. of Illinois*, 327 Ill. 622, 634-35 (1927).

¶ 24    The *Reid* decision is not binding authority. *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 37 (appellate court decisions before 1935 are not binding). With that said, the decision in that case still accurately reflects the present version of article XII. See also 3 Ill. L. and Prac. *Attachments* § 5 (2014) ("shares of stock of a corporation organized and existing under the laws of another state cannot be attached in Illinois"). The *Reid* decision does not, however, comport with the UCC.

¶ 25                                2. The UCC

¶ 26    The predecessor to the UCC was the Uniform Stock Transfer Act (Transfer Act) (Ill. Rev. Stat. 1957, ch. 23, ¶ 416 *et seq.*). *In re Estate of Jorgensen*, 70 Ill. App. 2d 398, 403 (1966). The Transfer Act provided that " 'No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder to be enjoined.' " *Trade Bond & Mortgage Co. v. Schwartz*, 303 Ill. App. 165, 168 (1940) (quoting 1917 Ill. Laws 316). Thus, in contrast to article XII, the Transfer Act generally required attachment to take place where the certificate was located. See 11 William Meade Fletcher, Cyclopedia of the Law of Corporations § 5103 (rev. ed. 1995). After the Transfer Act was superseded by the UCC, the same held true. See Ill. Rev. Stat. 1985, ch. 26, ¶ 8-317; see also 11 William Meade Fletcher, Cyclopedia of the Law of Corporations § 5101 (rev. ed. 1995) ("After states enacted the Uniform Stock Transfer Act,

and later Article 8 of the Uniform Commercial Code, courts tended to view the situs of shares as the place where the share certificates were located."). Effective in 1988, however, the UCC began to distinguish between certificated and uncertificated securities. See Ill. Rev. Stat. 1987, ch. 26, ¶ 8-317. While certificated securities were generally levied on by an officer's seizure of the security, uncertificated securities were generally levied on by legal process at the issuer's executive office. See Ill. Rev. Stat. 1987, ch. 26, ¶ 8-317.

¶ 27    Illinois ultimately adopted revised article 8 of the UCC, which now governs investment securities, including shares in closely held corporations. See 810 ILCS Ann. 5/8-103, Uniform Commercial Code Comment 2 (Smith-Hurd 2004). The purpose of that article is "to facilitate the negotiability of investment securities." *In re Wallace A. Erickson & Co.*, 44 B.R. 163, 166 (Bankr. N.D. Ill. 1984). In addition, "[t]he local law of the issuer's jurisdiction *** governs *** whether an adverse claim can be asserted against a person to whom transfer of a certificated or uncertificated security is registered or a person who obtains control of an uncertificated security." 810 ILCS 5/8-110 (West 2012). Furthermore, an issuer's jurisdiction is "the jurisdiction under which the issuer of the security is organized or, if permitted by the law of that jurisdiction, the law of another jurisdiction specified by the issuer." 810 ILCS 5/8-110(d) (West 2012).

¶ 28    Regardless of whether Illinois or Colorado law controls our inquiry, both jurisdictions follow the same relevant UCC provisions. Like article XII of the Code, the "Creditor's legal process" provision of the UCC, a provision which neither party cites, governs the levy of stock. Colo. Rev. Stat. Ann. § 4-8-112 (West 2012); 810 ILCS 5/8-112 (West 2012). That section provides, in pertinent, part, as follows:

> "(a) The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subsection (d) of this section. However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.

> (b) The interest of a debtor in an uncertificated security may be reached by a creditor only by legal process upon the issuer at its chief executive office in the United States, except as otherwise provided in subsection (d) of this section." Colo. Rev. Stat. Ann. § 4-8-112 (West 2012).

See also 810 ILCS 5/8-112 (West 2012). Thus, the UCC retained the distinction between certificated and uncertificated securities.

¶ 29    As to the former, the officer must seize from the debtor the actual security certificate, unless the certificate has been surrendered. It follows that a debtor's certificated stock in a Colorado corporation may be levied upon by an Illinois officer if the certificate is located within the State. See 11 William Meade Fletcher, Cyclopedia of the Law of Corporations § 5106 (rev. ed. 1995) ("Although the [UCC] in effect governs the situs of shares of stock for purposes of attachment or levy, it is perhaps more accurate to say that the Code identifies the jurisdiction that has authority over the shares."). This is in stark contrast to section 12-171 of the Code, which requires the sheriff, in all instances, to leave the judgment with the corporation's appropriate officer in order for levy to occur. See 735 ILCS 5/12-171 (West 2012). We further note that, unlike section 12-173 of the Code, the UCC does not require the corporation's officer to deliver to the sheriff a certificate of the number of shares held by the debtor. See 4A Timothy J. Storm, Illinois Practice § 6:67, cmt. 1 (2014) (observing that

section 12-173 of the Code conflicts with the UUC and "is virtually impossible for a corporate officer to comply with if the securities are held for the judgment debtor's benefit by a securities intermediary").[2]

¶ 30    Accordingly, at a minimum, article XII of the Code and revised article 8 of the UCC conflict regarding levy on certificated securities. See 4A Timothy J. Storm, Illinois Practice § 6:65, cmts. 2, 3 (2014). When the plain language of two statutes is conflicting, courts will attempt to construe them together if such a construction is reasonable. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). With that said, legislative intent remains paramount. *Id*. To that end, the more specific statute controls over the general statute, and the more recently enacted statute prevails over the older statute. *Department of Central Management Services v. American Federation of State, County & Municipal Employees* (*AFSCME*), 298 Ill. App. 3d 640, 645-46 (1998).

¶ 31    Here, the parties have presented no reasonable construction that would permit us to construe these statutes together. In addition, neither one is more specific than the other. The UCC's provisions, however, were clearly enacted more recently than the nineteenth century provisions still found in article XII of the Code. Accordingly, the UCC prevails and the appellate court's pre-UCC decision in *Reid* has no persuasive value.

¶ 32    We also reject Walker's reliance on the Florida decision of *Sargeant v. Al-Saleh*, 137 So. 3d 432 (Fla. Dist. Ct. App. 2014), a decision that is neither binding nor persuasive. *Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2011 IL App (1st) 093294, ¶ 24. Not only is *Sargeant* distinguishable, as it dealt with stock certificates located in foreign countries (*Sargeant*, 137 So. 3d at 433-34), but that case did not involve Florida's enactment of the UCC's "Creditor's legal process" provision. See Fla. Stat. Ann. § 678.1121 (West 2012). In addition, while Walker contends that all claims against an asset should be decided in a single forum, the legislature apparently considered that policy when it enacted section 2-1402(g) of the Code. That section states that where another individual claims an interest in property discovered in the citation, the court shall permit or require the claimant to appear and maintain his right. See 735 ILCS 5/2-1402(g) (West 2012); see also Robert G. Markoff, Jeffrey A. Albert, Steven A. Markoff & Christopher J. McGeehan, *Orders in Citation Proceedings*, in Creditors' Rights in Illinois § 2.54 (Ill. Inst. for Cont. Legal Educ. 2014) (a creditor must ascertain whether third parties have a claim to an asset discovered in a citation proceeding). To the extent Walker believes that existing statutes do not alleviate his policy concerns, Walker presents a matter for the legislature.

¶ 33    Similarly, we encourage the legislature to revisit the redundant provisions purporting to govern levy upon stock. It goes without saying that securities frequently constitute a debtor's most significant asset and are vital to a judgment creditor's ability to obtain redress. Extraneous legislation unnecessarily complicates what should be an efficient and expeditious process.

¶ 34                                    3. Walker's Stock

¶ 35    Having determined as a legal matter that foreign stocks are not categorically exempt from levy and turnover, we also find that the circuit court did not abuse its discretion by requiring

_____

[2]Our research indicates that the original authors of this resource were Jerold S. Solovy, Robert L. Byman, Howard S. Suskin, Barry Levenstam, and Vincent E. Lazar.

Walker to turn over his stock in this particular instance. As stated, Walker had the burden of demonstrating that his stock was exempt from levy and, thus, was exempt from turnover under section 2-1402. If Walker's stock is held in certificated securities located in Illinois, no impediment exists to their seizure. Walker has held steadfast to the *Reid* decision in this case, however, and has made no record of whether his securities were certificated or uncertificated, or where they are located. Accordingly, Walker did not satisfy his burden of demonstrating that his particular stocks were exempt from satisfying the judgment in this instance.

¶ 36                                    B. Sale of Property

¶ 37      Next, Walker asserts the circuit court improperly ordered his stock to be delivered to opposing counsel, rather than the sheriff, relying solely on *Dowling*. There, the reviewing court held that under the language of the 2002 version of section 2-1402(e) (735 ILCS 5/2-1402(e) (West 2002)), property must be delivered to the sheriff for sale. *Dowling*, 365 Ill. App. 3d at 354-55. Accordingly, the circuit court in that case erred in disposing of the debtor's property by ordering him to deliver his ownership interest in the property directly to his creditor. *Id*.

¶ 38      Here, however, the court did not expressly order Walker to convey his ownership interest to Wells Fargo. Instead, Wells Fargo's counsel was ordered to hold the stock until a broker could be appointed to sell it. In addition, Wells Fargo concedes on appeal that Walker remains the owner of his stock until that broker sells it. Furthermore, following *Dowling*, subsection 2-1402(e) was amended to allow the court to appoint individuals other than the sheriff to sell nonexempt property of the debtor. Robert G. Markoff, Jeffrey A. Albert, Steven A. Markoff & Christopher J. McGeehan, *Turnover to Sheriff or Court-Appointed Sales Agent*, in Creditors' Rights in Illinois § 2.56 (Ill. Inst. for Cont. Legal Educ. 2014) (citing Pub. Act 95-661 (eff. Jan. 1, 2008)). Subsection 2-1402(e) states as follows:

> "All property ordered to be delivered up shall, except as otherwise provided in this Section, be delivered to the sheriff to be collected by the sheriff or sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment. *If the judgment debtor's property is of such a nature that it is not readily delivered up to the sheriff for public sale or if another method of sale is more appropriate to liquidate the property or enhance its value at sale, the court may order the sale of such property by the debtor, third party respondent, or by a selling agent other than the sheriff upon such terms as are just and equitable.* The proceeds of sale, after deducting reasonable and necessary expenses, are to be turned over to the creditor and applied to the balance due on the judgment." (Emphasis added.) 735 ILCS 5/2-1402(e) (West 2012).

Accordingly, this statute authorizes the court to appoint an agent, in lieu of the sheriff, to sell the debtor's property. Although Walker argues the court did not expressly find that sale by an agent was more appropriate, the statute contains no such requirement. In any event, the court implicitly made that finding. We find no error.

¶ 39                           C. The Circuit Court's "Escrow" Order

¶ 40      Walker also asserts that the circuit court improperly ordered Wells Fargo's counsel to retain Walker's stock as an escrow agent. An escrow agent has a fiduciary duty to the party

making the deposit and the party for whose benefit the deposit is made. *Fantino v. Lenders Title & Guaranty Co.*, 303 Ill. App. 3d 204, 208 (1999). As a result, an escrow agent must act impartially toward all of the parties. *Patel v. Lacey*, 203 Ill. App. 3d 1048, 1051 (1990). Walker contends that Wells Fargo's counsel cannot act as both an advocate for Wells Fargo and an impartial escrowee. Walker's position rests, however, on the premise that section 2-1402 requires the stock to be placed in escrow or that the court intended that the stock be placed in escrow within the technical meaning of the term.

¶ 41　　Section 2-1402 does not require the circuit court to appoint an escrow agent. See 735 ILCS 5/2-1402 (West 2012). Instead, that statute grants the court broad powers to see that the judgment is satisfied. *Stonecrafters, Inc.*, 393 Ill. App. 3d at 958. In addition, the court intended that counsel hold the stock only until an appropriate broker could be appointed to sell it. Accordingly, this was merely an interim step toward finding a neutral broker. Furthermore, the court clearly knew that Wells Fargo's counsel was not a neutral individual, undermining Walker's belief that the court meant counsel to be an escrow agent in the technical sense. With that said, Walker is protected by the potential contempt proceedings Wells Fargo's attorney would face if he acted outside the scope of the court's order. While the court's use of the word "escrow" was seemingly inaccurate, Walker has not shown that the court's order overstepped the broad authority granted by section 2-1402.

¶ 42　　To the extent Walker contends the turnover order was vague, the circuit court clearly anticipated in its interlocutory order that details regarding the stock brokerage were yet to be determined. In addition, Walker has cited no authority in support of his position that the order was impermissibly vague. Accordingly, he has forfeited this contention. See *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36.

¶ 43　　　　　　　　　　　　　　　　D. Denial of Stay

¶ 44　　Finally, Walker contends the circuit court erred by denying his motion to stay the turnover order on the condition that he deposit his stock into the court registry. Walker correctly asserts that we review the denial of a stay for an abuse of discretion. *In re Estate of Michalak*, 404 Ill. App. 3d 75, 99 (2010). Absent a report of proceedings, however, the record in this case does not show how the court exercised its discretion. The circuit court's written order does not include the court's reasoning. In the absence of a sufficient record, we must presume the circuit court's order was sound. *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 51.

¶ 45　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 46　　We conclude that pursuant to the UCC, stock in non-Illinois corporations is not as a rule exempt from levy or, in turn, from turnover under section 2-1402. In addition, Walker did not demonstrate that his stock was exempt in this instance. Furthermore, the record before us reveals no error with respect to the court's chosen method for turnover. Accordingly, we affirm.

¶ 47　　Affirmed.