# Illinois Official Reports

## Appellate Court

---

### *Kauffman v. Wrenn*, 2015 IL App (2d) 150285

---

| | |
|---|---|
| Appellate Court Caption | JAMES B. KAUFFMAN and NANCY KAUFFMAN, Plaintiffs-Appellees, v. LAWRENCE B. WRENN and SUSAN E. WRENN, Defendants (Wells Fargo Bank, N.A., Third-Party Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-15-0285 |
| Filed | December 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-L-111; the Hon. Patrick J. O'Shea, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; monetary judgment vacated. |
| Counsel on Appeal | Colby Anne Kingsbury, Trina K. Taylor, and Kate E. Middleton, all of Faegre Baker Daniels LLP, of Chicago, for appellant.<br><br>Reese J. Peck, of Rathje & Woodward, LLC, of Wheaton, for appellees. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    Third-party respondent, Wells Fargo Bank, N.A. (Wells Fargo), appeals from the trial court's ruling requiring it to pay $70,457.94 to plaintiffs, James B. Kauffman and Nancy Kauffman, for violating a citation and order to freeze assets of a judgment debtor. The assets in question were in an interest on lawyers trust account (IOLTA). On appeal, Wells Fargo argues that the trial court erred in its ruling because: (1) the citation could require it only to freeze an account belonging to the judgment debtor, whereas the IOLTA account presumptively contained solely client funds; and (2) it was not responsible for repaying the funds transferred from the account, because only some of the funds were shown to belong to Wrenn, and even those were ultimately exempt. We affirm the portion of the trial court's ruling determining that Wells Fargo should have frozen the account in question. However, we reverse the portion of the trial court's ruling holding Wells Fargo liable for the funds transferred, and we vacate the monetary judgment against Wells Fargo, because (1) there was no proof that $42,898.95 of the funds belonged to the judgment debtor, and (2) the remaining funds were disability funds that were exempt from judgment under section 12-1001(g) of the Code of Civil Procedure (Code) (735 ILCS 5/12-1001(g) (West 2014)).

¶ 2                                      I. BACKGROUND

¶ 3    On February 1, 2013, the Kauffmans filed suit against defendant, Lawrence B. Wrenn (Wrenn), who was their former son-in-law, and Susan E. Wrenn, their daughter. Wrenn, an attorney, was living in Florida at the time and working at The Wrenn Law Firm. The Kauffmans alleged breach of contract and related claims. On October 17, 2013, the trial court entered a judgment in favor of the Kauffmans and against Wrenn for $84,278.28.

¶ 4    On January 3, 2014, the Kauffmans issued a citation to discover assets upon Wrenn. They also issued third-party citations to banks where Wrenn maintained accounts, including Wells Fargo. The citation prohibited Wells Fargo from:

> "allowing any transfer or other disposition of, or interfering with, any property *not exempt* from the enforcement of a judgment therefrom, a deduction order or garnishment, *belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her*, and from paying over or otherwise disposing of any moneys *not so exempt* which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding whichever occurs first." (Emphases added.)

An exhibit to the citation stated that upon receipt of the citation, "please do the following," including "[f]reeze all assets of Lawrence B. Wrenn *** in your possession, custody, or control in the amount of $168,556.56, which amount represents two times the judgment amount. *** The assets to be frozen include, without limitation, each and every account or deposit held by or for the benefit of Wrenn." Wells Fargo was also to "[i]dentify all amounts held for, or for the benefit of, Wrenn, Wrenn Law, and/or The Wrenn Law Firm, P.A."

¶ 5    Wells Fargo responded on January 8, 2014, and indicated that it had frozen six accounts holding a total of $1,283.22. On January 15, 2014, the trial court ordered Wells Fargo to turn over this amount "and any other property of Lawrence B. Wrenn that comes into the

possession, custody, or control of Wells Fargo Bank within the duration of the Third Party Citation."

¶ 6    The Kauffmans thereafter sought documents from Wells Fargo; around the same time, they discovered that Wrenn had been receiving disability payments from Northwestern Mutual Life Insurance Company (Northwestern Mutual).

¶ 7    On October 15, 2014, the Kauffmans filed a motion to find Wells Fargo in contempt for violating the citation and the trial court's January 15, 2014, order; they sought judgment against the bank for $70,451.94. They alleged that, according to bank statements, Wrenn was depositing his disability checks and checks from third parties into his IOLTA account at the bank. They alleged that from January 3, 2014, to May 2014, when the IOLTA account reached $0, Wrenn had transferred $70,451.94, largely in person at Wells Fargo branches or stores. This total excluded $1,200 that Wrenn had transferred from the IOLTA account to his personal accounts on January 6, 2014, and that Wells Fargo had paid the Kauffmans, in addition to the $1,283.22 that Wells Fargo originally turned over. The Kauffmans alleged that, by allowing Wrenn to transfer $70,451.94 out of the IOLTA account, Wells Fargo violated the restraining provision of the third-party citation, which prohibited it from allowing the transfer or disposition of property "belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her." The Kauffmans further argued that the evidence showed that at least $26,706.51 of the funds belonged to Wrenn personally, as they were payments on his disability claim with Northwestern Mutual.

¶ 8    In its response, Wells Fargo argued that it did not violate the citation's restraining order. Wells Fargo argued that if it had frozen the IOLTA account it might have needlessly compromised Wrenn's clients' money without any evidence from the Kaufmanns showing that the money was withdrawn for Wrenn's own benefit. It argued that, even otherwise, disability payments were exempt from citations.

¶ 9    The Kauffmans responded that the citation required Wells Fargo to freeze all assets belonging to Wrenn or to which he may be entitled and that Wells Fargo's subjective belief that the Northwestern Mutual checks were not subject to the citation was irrelevant. They argued that, even if the payments were exempt, the funds lost such status when Wrenn deposited them into the IOLTA account. Last, the Kauffmans argued that Wells Fargo acted willfully when it violated the express terms of the citation and order.

¶ 10    On February 20, 2015, the parties filed a stipulation of agreed facts, which also admitted the genuineness of documents. The stipulation included the following facts, in relevant part: (1) Wrenn was a partner and shareholder of The Wrenn Law Firm; (2) the account at issue was an IOLTA account opened on June 17, 2011, for the law firm,[1] with Wrenn and another man listed as authorized signers; (3) in response to the citation, Wells Fargo froze money in six accounts holding Wrenn's personal assets, totaling $1,283.22, and it turned over this money following the trial court's January 15, 2014, order; (4) Wells Fargo did not freeze the IOLTA account of The Wrenn Law Firm; (5) at the time of the citation, there was $4,975.95 in the IOLTA account; (6) from January 27, 2014, to April 22, 2014, Wrenn deposited into the IOLTA account a total of $26,856.94 in checks from Northwestern Mutual pursuant to

---

[1]The account was a "Basic Business Checking IOLTA" account in the name of "Lawrence B[.] Wrenn AAL."

his disability claim; (7) during the same period, a total of $37,923 from other sources was deposited into the IOLTA account, and the parties had no basis to dispute that the payors on the checks were law firm clients, other than one payment for "rent" that bounced; (8) Wells Fargo turned over another $1,200 that had been transferred out of the IOLTA account to Wrenn's personal accounts; and (9) a total of $69,128.95 was withdrawn from the IOLTA account (excluding the $1,200 turned over) until it was emptied in May 2014. The stipulation further contained details of the IOLTA account's transactions.

¶ 11 On March 4, 2015, the trial court entered judgment for the Kauffmans and against Wells Fargo for $70,451.94.[2] In making its ruling, the trial court stated as follows. Wells Fargo's argument relied on the alleged exempt nature of attorney-client funds and disability funds. However, those exemptions were for Wrenn to assert, not the bank, and Wrenn would be entitled to a finding of such exemptions only after a hearing. "There [was] no evidence one way or other that they were disability payments other than what the bank claims they were." "The statute" did not allow Wells Fargo to unilaterally determine which funds were exempt, and when Wells Fargo took upon itself to do so, it assumed liability in the event that its decision was wrong. Wells Fargo should have frozen the funds in question and then allowed the court to decide whether the funds were in fact exempt. The funds were withdrawn and no longer available for the court to make such a determination.

¶ 12 The trial court declined to find Wells Fargo in contempt, stating that, although the bank unilaterally and erroneously determined that the funds were exempt, there was no willful failure to obey the court's order.

¶ 13 Wells Fargo timely appealed.

¶ 14 II. ANALYSIS

¶ 15 Wells Fargo argues that the trial court erred in ruling that it violated the citation and order. We review *de novo* a trial court's ruling in supplementary proceedings where the trial court did not conduct an evidentiary hearing or make factual findings. *PNC Bank, N.A. v. Hoffman*, 2015 IL App (2d) 141172, ¶ 29. This standard applies to the issues on appeal here.

¶ 16 Wells Fargo cites section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2014)), which governs supplementary proceedings. Specifically, section 2-1402(f)(1) states:

"The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property *not exempt from the enforcement of a judgment therefrom*, a deduction order or garnishment, *belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her*, and from paying over or otherwise disposing of any moneys *not so exempt* which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first. The third party may not be obliged to withhold the payment of any moneys beyond double the amount of the balance due sought to be enforced by the judgment creditor. The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter

_____

[2]It is unclear why the Kauffmans requested, and the trial court awarded, $70,451.94 rather than the $69,128.95 that was stipulated to have been withdrawn from the IOLTA account; the parties do not address this discrepancy.

judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or *in the amount of the value of the property transferred,* whichever is lesser." (Emphases added.) 735 ILCS 5/2-1402(f)(1) (West 2014).

The third-party citation sent to Wells Fargo contained language identical to the first two sentences quoted above.

¶ 17        Wells Fargo argues that under the language the trial court had the authority to punish it for not freezing the account only if the funds were Wrenn's assets or he had some other statutory entitlement to them. Wells Fargo cites *Pelczynski v. Dolatowski*, 308 Ill. App. 3d 753, 758 (1999), where this court stated that the judgment creditor has the burden to demonstrate that the third party possesses assets of the judgment debtor. Wells Fargo additionally cites *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 314 (1989), where the court stated that the third party is prohibited from transferring only what property the judgment debtor owns. Wells Fargo argues that it properly froze and turned over the assets in Wrenn's personal accounts and the funds he later attempted to transfer into those accounts. It argues, however, that it had no obligation to freeze an IOLTA account that did not exclusively hold, and should not have held, any funds belonging to Wrenn. Wells Fargo cites various Florida bar association rules in support of the proposition that IOLTA accounts presumptively contain only client funds. In contrast, Wells Fargo argues that the trial court's order would require a bank to presume that a lawyer-judgment debtor has violated or might violate the rules of professional conduct and to freeze the funds of innocent third parties until the judgment is satisfied. Wells Fargo maintains that this contradiction puts it in an untenable position.

¶ 18        Wells Fargo argues that, in addition to having no authority to order it to freeze the IOLTA account, the trial court lacked authority to enter a judgment for the full amount transferred from the account, because the evidence established that only some of the funds belonged to Wrenn and that even those funds were exempt. Wells Fargo argues that the funds in the IOLTA account fell into the three categories of (1) funds owned by third parties, (2) funds where the Kauffmans did not prove ownership, and (3) funds that were exempt from collection, and that Wells Fargo should not have been deemed responsible for any of them. More specifically, Wells Fargo argues that the parties stipulated that they had no basis to dispute that deposits totaling $37,923 were from law firm clients, and Wells Fargo argues that there was no evidence that the initial $4,975.95 in the account belonged to Wrenn, either. Wells Fargo argues that the Kauffmans also could not satisfy the judgment with disability funds that Wrenn deposited into the IOLTA account, because disability funds are exempt from collection under section 12-1001(g) of the Code (735 ILCS 5/12-1001(g) (West 2014)). Wells Fargo argues that the trial court erroneously concluded that there was no evidence that the Northwestern Mutual checks constituted disability payments, because the parties in fact stipulated that they were disability payments.

¶ 19        The Kauffmans cite *Fox Cartage, Inc.*, 126 Ill. 2d at 314, for the proposition that the section 2-1402 restraining provision serves to provide a means to forestall the judgment debtor or third party from frustrating the supplemental proceedings before the judgment creditor has had a chance to reach the assets in the judgment debtor's or third party's possession. They argue that Wells Fargo should not have made any determination as to what was exempt under the citation, as its only obligation was to freeze accounts that Wrenn held

or on which he was a signatory. The Kauffmans note that the citation required Wells Fargo to freeze accounts and prohibit the transfer or disposition of funds belonging to Wrenn or "which may thereafter be acquired by or become due to him." They argue that, by allowing *any* transfers to be made from Wrenn's accounts before the trial court made a determination regarding what funds belonged to Wrenn and as to any exemption Wrenn raised, Wells Fargo failed to reasonably comply with the citation and order. The Kauffmans argue that Wells Fargo's own actions contradict its position that it did not need to turn over any funds in the IOLTA account, because it did turn over $1,200 of such funds. According to the Kauffmans, whether the money in the IOLTA account could be used to satisfy the judgment against Wrenn was a matter to be addressed in a separate proceeding by the trial court, but by allowing Wrenn to withdraw the entirety of the IOLTA account, Wells Fargo prevented the trial court from making such a determination.

¶ 20 The Kauffmans cite *Vendo Co. v. Stoner*, 108 Ill. App. 3d 51, 57-58 (1982), and *Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 362 (1981), for the proposition that Wells Fargo's subjective belief that the funds in the IOLTA account were exempt was irrelevant to whether Wells Fargo violated the citation and order. They argue that, even if Wrenn's disability payments were exempt from an attachment to satisfy a judgment, they lost that exempt status when Wrenn deposited them into the IOLTA account, as they became funds for the benefit of Wrenn's clients rather than his family. They also argue that the funds' exempt character is not at issue in a motion for contempt for failure to comply with a court order. See *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984) (that funds are statutorily exempt is not a defense to contempt; whether execution on a contempt order could be had on exempt property was a separate issue).

¶ 21 Wells Fargo responds that Illinois law does not, and should not, require a third-party citation recipient to preemptively freeze an IOLTA account based solely on the fact that the lawyer signatory is a judgment debtor. Wells Fargo argues that where an IOLTA account has been handled appropriately a judgment creditor would not be entitled to any funds in the account, because they are held in trust for third parties. Wells Fargo argues that, to the contrary, the Kauffmans would have third-party citation recipients presume that all IOLTA accounts with judgment debtor signatories will be misused and should be presumptively frozen. Wells Fargo maintains that the cases cited by the Kauffmans are distinguishable because they do not involve trust accounts. Wells Fargo also argues that the fact that it later turned over $1,200 from the IOLTA account to the Kauffmans does not make its position inconsistent, as it seized the money only after Wrenn had transferred it into one of his frozen personal accounts.

¶ 22 The parties do not appear to dispute, and we agree, that upon receiving the citation Wells Fargo was not required to look at the transactions within the IOLTA account to make a subjective determination as to whether the funds were exempt. Rather, the initial question before us is whether the third-party citation required Wells Fargo to freeze the IOLTA account, just as it froze Wrenn's personal accounts.

¶ 23 The citation here was issued in the context of a section 2-1402 supplementary proceeding. Such proceedings are meant to provide a mechanism for a judgment creditor to discover assets of a judgment debtor in order to satisfy an unpaid judgment. *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 622-23 (1994). We construe section 2-1402 liberally to provide discovery of a debtor's assets and income and to vest the trial

court with broad power to apply discovered property to satisfy a judgment. *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 878 (1998).

¶ 24 Illinois Supreme Court Rule 277 (eff. Jan. 4, 2013) sets forth the procedure for conducting supplementary proceedings. 735 ILCS 5/2-1402(a) (West 2014) ("The procedure for conducting supplementary proceedings shall be prescribed by rules."); *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 80. Rule 277 states, in relevant part, that the supplementary proceeding "may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. S. Ct. R. 277 (eff. Jan. 4, 2013). The rule allows the trial court to punish a party who fails to obey a citation, subpoena, or court order under the rule for contempt. *Id.*

¶ 25 During the course of supplementary proceedings, a judgment creditor may serve a citation to discover assets on a third party, requiring it to freeze assets. 735 ILCS 5/2-1402(f) (West 2014). After the citation is served, the judgment becomes a lien on the judgment debtor's assets. 735 ILCS 5/2-1402(m) (West 2014). At the same time, the prohibition in a third-party citation is not an injunction but rather serves to warn the third party of possible sanctions it could incur if it transfers the judgment debtor's assets. *Fox Carthage, Inc.*, 126 Ill. 2d at 314-15.

¶ 26 The only relevant inquiries in a supplementary proceeding are (1) whether the judgment debtor possesses assets that should be applied to satisfy the judgment, and (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment. *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002). The judgment creditor has the burden of showing that the citation respondent has assets of the judgment debtor. *Pelczynski*, 308 Ill. App. 3d at 758. There are two exceptions to the section 2-1402(f)(1) restraining provision, those being property exempt from the enforcement of a judgment thereon and property that is more than double the balance sought by the judgment creditor. 735 ILCS 5/2-1402(f)(1) (West 2014); *Air Auto Leasing Co.*, 297 Ill. App. 3d at 878.

¶ 27 The disputed account here was an IOLTA account in the name "Lawrence B[.] Wrenn AAL." In examining the nature of an IOLTA account, we look to the Illinois Rules of Professional Conduct, which were modeled after the American Bar Association (ABA) Model Rules of Professional Conduct. See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 179 (1997). The Florida Rules of Professional Conduct are similarly modified versions of the ABA Model Rules. *Hagopian v. Justice Administrative Comm'n*, 18 So. 3d 625, 643 n.11 (Fla. Dist. Ct. App. 2009). Illinois Rule of Professional Conduct 1.15(a) requires an attorney to hold clients' property separate from the lawyer's own property. Ill. R. Prof. Conduct (2010) R. 1.15(a) (eff. Sept. 1, 2011). "It is 'absolutely impermissible' for an attorney to commingle his or her funds with those of a client." *In re Edmonds*, 2014 IL 117696, ¶ 87 (citing *In re Clayter*, 78 Ill. 2d 276, 278-79 (1980)). An IOLTA account should hold all client or third party funds that "are nominal in amount or are expected to be held for a short period of time, including advances for costs and expenses, and funds belonging in part to a client or third person and in part presently or potentially to the lawyer or law firm." Ill. R. Prof. Conduct (2010) R. 1.15(f) (eff. Sept. 1, 2011); *cf.* West's F.S.A. Bar Rule 5-1.1 (funds held in client trust account can include advances for fees). Greater sums or funds that are expected to be held for a longer period of time are to be deposited into a separate interest-bearing client trust account, with the client designated as the income beneficiary. Ill. R. Prof. Conduct (2010) R. 1.15(f) (eff. Sept. 1, 2011). The Lawyers Trust Fund of Illinois distributes

interest generated by Illinois IOLTA accounts to legal aid agencies. *Wieland v. Lawyers Trust Fund*, 359 Ill. App. 3d 1147, 1149-50 (2005). All 50 states have IOLTA programs. *Id.* at 1150.

¶ 28 In examining section 2-1402, we are cognizant of the rules of statutory interpretation. In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, which is best indicated by the statute's plain language. *McVey v. M.L.K. Enterprises, L.L.C.*, 2015 IL 118143, ¶ 11. We give undefined terms their ordinary and popularly understood meanings. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15. If the statutory language is clear, we must apply it as written, without resorting to extrinsic aids of statutory construction. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56.

¶ 29 Wells Fargo takes the position that under section 2-1402 the citation pertains to only nonexempt property. However, Wells Fargo does not cite, nor have we found, any statutory exemption for IOLTA accounts. See, *e.g.*, 735 ILCS 5/12-901, 12-1001, 12-1006 (West 2014) (listing various exemptions). Moreover, as stated, while an IOLTA account is designed to hold client funds, it may also contain funds belonging in part to the lawyer or law firm. Ill. R. Prof. Conduct (2010) R. 1.15(f) (eff. Sept. 1, 2011). It may further hold retainers from which attorney fees may be deducted. See Hillary A. Webber, *Equal Justice Under the Law: Why IOLTA Programs Do Not Violate the First Amendment*, 53 Am. U. L. Rev. 491, 494 (2003).

¶ 30 We conclude that the portion of funds that the attorney may later designate as his or her property falls within the plain language of section 2-1402(f)(1) prohibiting the transfer of property "belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her" (735 ILCS 5/2-1402(f)(1) (West 2014)), at least in circumstances such as those in this case, where the IOLTA account was in the judgment debtor's own name. Accordingly, we agree with the trial court's ruling that Wells Fargo violated the citation to discover assets by failing to freeze the IOLTA account.

¶ 31 The next issue is whether the trial court erred by awarding the Kaufmanns judgment in the amount of funds transferred by Wrenn. Section 2-1402(f)(1) states that the court may punish a third party who violates the restraining provision of a citation by entering "judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." *Id.* In this case, the trial court did not require Wells Fargo to pay the entire amount of the judgment Wrenn owed. Rather, it entered judgment in the "amount of the value of the property transferred." *Id.*

¶ 32 The parties stipulated that the IOLTA account contained $4,975.95 when the citation was issued, and they also stipulated that there was no basis to dispute that subsequent deposits totaling $37,923 came from law firm clients. As Wells Fargo points out, in *Fox Carthage, Inc.* our supreme court quoted the following language with approval: " 'the "third party" is forbidden to transfer only what property he [the judgment debtor] owns, and cannot be punished without proof that any property thereafter transferred was the debtor's in fact.' " *Fox Carthage, Inc.*, 126 Ill. 2d at 315 (quoting *Capital Co. v. Fox*, 85 F.2d 97, 101 (2d Cir. 1936)); see also *Mendez v. Republic Bank*, 725 F.3d 651, 653 (7th Cir. 2013) ("If the third party releases the property without a court order giving permission to do so, the third party may be liable to the judgment creditor for *any property of the debtor that was released*, up to

the value of the underlying judgment." (Emphasis added.)). However, here the trial court held Wells Fargo responsible for the $4,975.95 and $37,923 without any proof that the money belonged to Wrenn rather than his clients. That is, while Wells Fargo should have frozen the IOLTA account because it could have contained money later becoming due to Wrenn, the citation did not operate as an injunction but rather served as a warning of possible future sanctions (*Fox Carthage, Inc.*, 126 Ill. 2d at 314-15), and the sanctions could be imposed only after evidence showing that the transferred property actually belonged to Wrenn (*id.* at 314), which the Kaufmanns did not provide. Accordingly, the trial court erred by including the $4,975.95 and $37,923 in the judgment against Wells Fargo.

¶ 33    Regarding the disability funds, the parties stipulated that Wrenn deposited a total of $26,856.94 in checks from Northwestern Mutual pursuant to his disability claim. The trial court apparently overlooked this stipulation in stating that "[t]here [was] no evidence one way or other that they were disability payments other than what [Wells Fargo] claims they were." It is clear that this money belonged to Wrenn personally, at least when it was issued to him.

¶ 34    Wells Fargo argues that it is not responsible for this portion of the funds, either, because disability funds are exempt from collection. Section 2-1402(f)(1) allows a third party to be held responsible for the "amount of the value of the *property* transferred." (Emphasis added.) 735 ILCS 5/2-1402(f)(1) (West 2014). Viewed in context of the entirety of section 2-1402(f)(1), "property" as used in that phrase necessarily refers to "property *not exempt* from the enforcement of a judgment therefrom." (Emphasis added.) *Id.* Therefore, Wells Fargo could not be required to pay for transferred property that was exempt from the enforcement of a judgment. See also *Air Auto Leasing Co.*, 297 Ill. App. 3d at 878 (exceptions to the section 2-1402(f)(1) restraining provision include property exempt from the enforcement of a judgment); *In re Fridge*, 239 B.R. 182, 188 (Bankr. N.D. Ill. 1999) (citation and its restraining provision bar only transfer of a debtor's nonexempt property, so there is no violation of the citation if the debtor uses or spends exempt property).

¶ 35    Although the Kauffmans rely on *Logston*, 103 Ill. 2d at 285, for the proposition that personal property exemptions do not protect a party from a contempt order, here the trial court specifically declined to find Wells Fargo in contempt. Moreover, *Logston* recognized that whether a party could collect on exempt property was a separate issue (*id.*), and here we are examining Wells Fargo's potential liability for transferring exempt property, which is a subject *Logston* did not address. *Logston* also dealt with contempt for failure to make support payments, and support payments are an exception to at least some otherwise exempt benefits. See *In re Marriage of Murphy*, 338 Ill. App. 3d 1095, 1098 (2003).

¶ 36    We further recognize that section 2-1402(f)(l) (735 ILCS 5/2-1402(f)(l) (West 2014)) provides for a hearing at which the judgment debtor may seek a declaration that certain property is exempt. At least one case has relied on this section to state that the judgment debtor must affirmatively assert an exemption, or risk forfeiting it. *In re Marriage of Takata*, 383 Ill. App. 3d 782, 788 (2008). We need not parse out the exact consequences of a judgment debtor's failure to assert an exemption, because that is not the precise issue before us here. We do note that another section, section 2-1402(j), provides:

> "This Section does not grant the power to any court to order installment or other payments from, or compel the sale, delivery, surrender, assignment or conveyance of *any property exempt by statute* from the enforcement of a judgment thereon, a

deduction order, garnishment, attachment, sequestration, process or other levy or seizure." (Emphasis added.) 735 ILCS 5/2-1402(j) (West 2014).

As section 2-1402(j) does not allow statutorily-exempt property to be used to satisfy a judgment, it supports our interpretation of section 2-1402(f)(1) as not holding a third party liable for allowing the transfer of property that was statutorily exempt from the enforcement of a judgment. See also *In re Weitzman*, 381 B.R. 874, 881 (Bankr. N.D. Ill. 2008) (citation's prohibition "merely serves to warn the third-party citee of possible sanctions he may incur if he transfers the judgment debtor's *non-exempt assets* prior to the citation court ruling on whether those assets should be applied to the judgment" (emphasis added)).

¶ 37    Section 12-1001(g) states that the "debtor's right to receive" a disability benefit is exempt from judgment. 735 ILCS 5/12-1001(g) (West 2014). The Kaufmanns argue that, once Wrenn deposited the disability checks into the IOLTA account, they lost their exempt status because they became for the benefit of Wrenn's clients, rather than himself and his family. If this were true, Wells Fargo would not be responsible for repaying the money, as it no longer belonged to the judgment debtor. See *supra* ¶ 32. However, exempt funds that are reasonably traceable will retain their exempt status even if they are commingled with nonexempt funds in the same bank account. See *In re Estate of Merritt*, 272 Ill. App. 3d 1017, 1021 (1995).

¶ 38    In any event, we note that the appellate court has interpreted section 12-1001(g) as exempting a debtor's right *to receive* certain benefits, as opposed to property traceable to those benefits. For example, in *Fayette County Hospital v. Reavis*, 169 Ill. App. 3d 246, 248 (1988), the debtors purchased a certificate of deposit (CD) with Social Security benefits. The court noted that, although section 12-1001(g) exempted a debtor's right to receive Social Security benefits, the creditor was "not attempting to attach social security benefits as they are received" but rather trying to obtain funds of a CD that were traceable exclusively to the Social Security benefits. *Id.* at 249. The court contrasted section 12-1001(g) with section 12-1001(h), which exempted a " 'debtor's right to receive, *or property that is traceable to*' " certain awards and payments. (Emphasis added.) *Id.* at 250 (quoting Ill. Rev. Stat. 1985, ch. 110, ¶ 12-1001(h)). The court stated that an expression of certain exceptions in a statute was construed as an exclusion of all others, and it concluded that in section 12-1001(g) the legislature did not intend to exempt property traceable to Social Security benefits. *Id.* However, the court ultimately concluded that the benefits were exempt under the federal Social Security Act (42 U.S.C.A. § 407(a) (West 1983)). *Fayette County Hospital*, 169 Ill. App. 3d at 251.

¶ 39    The appellate court subsequently relied on *Fayette County Hospital* in *In re Marriage of Pope-Clifton*, 355 Ill. App. 3d 478, 479 (2005). There, the court was presented with the issue of whether a bank account containing only funds received as Veterans' Administration disability benefits was exempt from collection to pay a judgment for child support, maintenance, and related costs. The court relied on *Fayette County Hospital* in reasoning that under section 12-1001(g) only a debtor's right to receive veterans' benefits was exempt, and not funds traceable to those benefits. *Id.* at 481-82.

¶ 40    In contrast, this court took a different approach in *Auto Owners Insurance v. Berkshire*, 225 Ill. App. 3d 695 (1992), albeit for a different statute, section 12-1006 of the Code (Ill. Rev. Stat. 1989, ch. 110, ¶ 12-1006). That statute exempts a "debtor's interest in or right, whether vested or not, to the assets held in or to receive" payments under a retirement plan.

735 ILCS 5/12-1006 (West 2014).[3] During a section 2-1402 supplementary proceeding, the debtor asserted this exemption for $696.32 in retirement benefits in his checking account. *Berkshire*, 225 Ill. App. 3d at 696-97. The trial court had ruled that, because the debtor had deposited the money into a personal account, they were no longer exempt. *Id.* We disagreed, stating:

> "Where the purpose of an exemption is to protect income necessary for the support of a debtor and his family, it makes no sense to allow the funds to be exempt so long as the debtor cannot use them. [Citations.] Thus, section 12-1006 allows the debtor to receive benefits and to use them as well. Any other interpretation frustrates the legislative policy and renders the statute meaningless." *Id.* at 698.

We noted that personal property exemption statutes are liberally construed to protect debtors. *Id.* at 699. We stated that, as long as the debtor continued to hold and use the funds for the support of the debtor and his family, the funds traceable to exempt payments were exempt. *Id.* at 698-99. In contrast, if the debtor transformed the exempt payments into an investment, the statute's purpose of allowing the funds for support was not being met, and the funds should lose their exempt character. *Id.* at 699.

¶ 41 In arriving at our conclusion, we recognized that *Fayette County Hospital* reached an arguably different result. *Id.* We stated that since that decision the legislature had moved the exemptions for pensions into a separate statutory section and expanded the language, so it should be construed apart from section 12-1001. We further stated that we could not read statutes so as to render them meaningless and that:

> "Not to permit the tracing of the ready funds would frustrate the purposes of the exemption and pension statutes, which are to provide support for the debtor and his family and to prevent them from becoming public charges. [Citations.] Although the other exemption statutes provide for the tracing of some benefits and not others, the principle of *expressio unius est exclusio alterius*, applied in [*Fayette County Hospital*], has no place in interpreting the exemption statutes when to apply it would frustrate the purpose of the statutes." *Id.* at 699-700.

We ultimately remanded the case for the determination of whether the funds were from a lump-sum distribution, in which case they would have lost their exempt status because they were not rolled over into another qualified plan, or whether they were pension distributions intended for support, in which case they would be exempt. *Id.* at 701.

¶ 42 While *Berkshire* pertains to section 12-1006, the language in that exemption statute, referring to "interest in or right *** to the assets held in or to receive *** payments" from retirement plans (735 ILCS 5/12-1006 (West 2014)), does not significantly differ from a "debtor's right to receive" (735 ILCS 5/12-1001(g) (West 2014)) disability payments, where the funds in question are in a bank account. This is especially true in light of the liberal construction afforded to personal-property exemption statutes to protect debtors. *Berkshire*, 225 Ill. App. 3d at 699. In *Berkshire*, we expressed our belief that to not allow the tracing of funds would frustrate the purpose of all exemption statutes, which were designed to allow a debtor to support himself and his family, and that a contrary interpretation relying on the explicit allowance of tracing for some benefits but not others was unreasonable because it would frustrate the statutes' purpose. *Id.* at 699-700. Accordingly, we adhere to our analysis

---

[3]The relevant text of the statute remains unchanged from the version discussed in *Berkshire*.

in *Berkshire* that the exemption statutes allow for the tracing of funds where the funds are being used for the debtor's support, rather than as an investment.

¶ 43     We further note that *Berkshire* and the instant case can be distinguished from *Fayette County Hospital*, as there the court stated that the creditor was "not attempting to attach social security benefits as they are received," but rather attempting to obtain the proceeds of a CD. *Fayette County Hospital*, 169 Ill. App. 3d at 249. Here, in contrast, the disability checks were being deposited into a checking account, and Wrenn continuously removed the proceeds. *Cf. In re Schoonover*, 331 F.3d 575, 577 (7th Cir. 2003) (section 12-1001(g) "ensures that recipients enjoy the minimum monthly income provided by the benefits laws; it does not entitle recipients to shield hoards of cash"). Moreover, *Berkshire* and this case can be distinguished from *Pope-Clifton*, 355 Ill. App. 3d 478, because that case involved a support judgment, and, as stated, support payments are an exception to at least some otherwise exempt benefits. See *Murphy*, 338 Ill. App. 3d at 1098. Indeed, in response to the debtor's argument that allowing the court to seize his bank account would deprive him of his means of subsistence, the *Pope-Clifton* court noted that veterans' benefits were designed to support both veterans and their families. *Pope-Clifton*, 355 Ill. App. 3d at 482. In other words, there are different policy considerations at work when the judgment is to collect support due to those for whom the debtor is financially responsible, as opposed to other creditors.

¶ 44     We additionally recognize that many federal bankruptcy courts have held that section 12-1001(g) exempts the right to receive the listed benefits but not their actual receipt, at least insofar as they were received before the filing of the bankruptcy petition. See, *e.g.*, *In re Austin*, No. 14-70299, 2014 WL 3695370, at *3 (Bankr. C.D. Ill. July 24, 2014) (money in bank account from public benefits not exempt under section 12-1001(g)); *In re Russell*, No. 13-80468, 2013 WL 4591985, at *2 (Bankr. C.D. Ill. Aug. 28, 2013) (right to receive funds does not protect funds already received); *In re Frueh*, 518 B.R. 881, 884 (Bankr. N.D. Ill. 2014) (section 12-1001(g) applies only to the rights to receive future payments and not funds received prepetition or to the proceeds thereof); *In re McQuaid*, 492 B.R. 514, 517-18 (Bankr. N.D. Ill. 2013) (trust funds traceable to a disability payment made prior to bankruptcy petition were not exempt). However, in this case the disability funds in question were deposited postcitation. Even otherwise, the bankruptcy courts were relying on their interpretation of *Fayette County Hospital* and *Pope-Clifton* and, in any event, lower federal court decisions are not binding on this court. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30. Moreover, the court in *In re Austin* recognized that if one purpose of providing public assistance benefits "is to help low-income families meet their basic needs, it makes little sense not to protect the benefit once it is in the hands of a debtor and actually available to them to meet that purpose." *In re Austin*, 2014 WL 3695370, at *3.

¶ 45     Again, our position is not that section 12-1001(g) exempts all property traceable to the benefit listed but, rather, that funds that are being used for the debtor's support as the funds are received, as opposed to being accumulated for investment purposes, are exempt under the statute. Here, the funds from the disability checks fall into this category, as they were deposited into a checking account and continuously removed. Accordingly, they are exempt under section 12-1001(g), and the trial court erred in ordering Wells Fargo to repay this portion of the funds as well.

¶ 46 III. CONCLUSION

¶ 47 In sum, we agree with the trial court that Wells Fargo should have frozen Wrenn's IOLTA account, because it potentially included funds to which Wrenn "may be entitled or which may thereafter be acquired by or become due to him" (735 ILCS 5/2-1402(f)(1) (West 2014)), and we affirm this portion of the trial court's ruling. However, Wells Fargo could ultimately be held responsible only for the transfer of funds belonging to the judgment debtor (see *Fox Carthage, Inc.*, 126 Ill. 2d at 314) that were not otherwise exempt (see 735 ILCS 5/2-1402(f)(1) (West 2014); *supra* ¶¶ 34-36). There was no proof that the original $4,975.95 in the account or the $37,923 from client checks belonged to Wrenn. Moreover, the $26,856.94 stipulated to be from disability checks was exempt under section 12-1001(g) and *Berkshire*, 225 Ill. App. 3d at 699-700. Accordingly, we reverse the portion of the trial court's ruling holding Wells Fargo responsible for the funds transferred from the IOLTA account after the citation's issuance, and we vacate the monetary judgment against Wells Fargo.

¶ 48 Affirmed in part and reversed in part; monetary judgment vacated.